## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| DEXTER SHAW, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | CASE NO: 5:12-CV-0135-CAR-MSH |
| | : | |
| Warden HILTON HALL, et. al. | : | |
| | : | |
| Defendants. | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| | : | BEFORE THE U.S. MAGISTRATE JUDGE |

_____

### ORDER & RECOMMENDATION

Plaintiff Dexter Shaw, a state inmate currently confined at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed this *pro se* civil rights action under 42 U.S.C. § 1983.  Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the district court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a).  The undersigned has now completed this review of Plaintiff's "Amended Complaint" (ECF No. 33), and will allow certain claims against Defendants **Hall, Humphrey, Upton, Caldwell, Malone, Gore, Bishop, Smith, Finderson, Burnside, Graves, Forrest, Lewis,** and **Johnson**, as specified herein, to proceed beyond the frivolity review stage.  It is **RECOMMENDED** that all other claims brought pursuant to 42 U.S.C. §1983 be **DISMISSED** for failure to state a claim. *See* 28 U.S.C. §1915A(b)(1).

## STANDARD OF REVIEW

When conducting preliminary screening pursuant to 28 U.S.C. § 1915A(a), the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys" and will be "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). A *pro se* prisoner's pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when viewed liberally and in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §1915A(b)(1). *See also* 28 U.S.C. §1915(2)(B) (requiring the same when a plaintiff is proceeding *in forma pauperis*).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To state a cognizable claim, the allegations in the complaint must also do more than "merely create[] a suspicion [of] a legally cognizable right of action." *Id.* at 555. "Pleadings must be something more than an ingenious academic exercise in the conceivable." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted)). "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Therefore, to

survive a §1915A preliminary review, a prisoner's complaint must "raise the right to relief above the speculative level" by alleging facts which create "a reasonable expectation" that discovery will reveal the evidence necessary to prove a claim.  *See Twombly*, 550 U.S. at 555-556.

To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint must be dismissed.  *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003); 28 U.S.C. § 1915A(b).

## ANALYSIS OF CLAIMS

The present action arises out of Plaintiff Dexter Shaw's confinement in both Georgia State Prison and the "Hi-Max" unit at the Georgia Diagnostic and Classification Prison.  Plaintiff's forty-eight page Amended Complaint includes 196 enumerated paragraphs describing various claims against more than twenty named defendants.  The body of Plaintiff's Amended Complaint, i.e., the "Statement of Facts" (Amnd. Compl. at ¶¶ 7-179)), describes a chronological series of events occurring during the period between 2001 and 2013.  The latter portion of the Amended Complaint, the "Claims for Relief" section (*Id*. at ¶¶ 180-196), identifies Plaintiff's intended claims.  The undersigned will address each of these claims in turn below.

As preliminary matter, however, the undersigned finds that none of Plaintiff's

claims against the "John Doe" defendants need be addressed.   "As a general matter, fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).   The one exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id*. (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).   Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216.   Plaintiff's Amended Complaint does not contain any sort of description of the John Doe Defendants.   They are merely represented by a blank line where the name should be.   It is thus **RECOMMENDED** that all claims against the un-named defendants be **DISMISSED** without prejudice, pursuant to 28 U.S.C. §1915A(b)(1), for failure to state a claim.

To the extent that Plaintiff has attempted to state claims based upon the conditions of his confinement prior to April 14, 2010, the undersigned finds that such claims are generally time barred.   Plaintiff's original Complaint was filed on April 13, 2012, and in Georgia, section 1983 claims have a two year statute of limitations.   *See Owens v. Okure*, 488 U.S. 235, 236 (1989), (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)); O.C.G.A. § 9-3-33 (1982).   The Amended Complaint contains no allegations suggesting why the statute of limitations may be tolled as to Plaintiff's Eighth Amendment claims regarding the conditions of his confinement at Georgia State Prison from 2001 through 2008 (*See* e.g., Am. Compl. at ¶¶ 8 and 13).   It is thus **RECOMMENDED** that these claims, presumably against Warden Upton (though no Defendant was specifically identified) be

**DISMISSED** with prejudice.

Plaintiff's Amended Complaint also contains allegations of other conduct or conditions occurring prior to April 14, 2010.   However, it does not appear beyond a doubt from the Amended Complaint itself that Plaintiff can prove no set of facts which would avoid a statute of limitations bar.   *See Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1280 (11th Cir. 2001).   Plaintiff alleges that the unconstitutional conditions of confinement, procedural due process violations, retaliation and denial of a waist chain profile have continued well into the limitations period.   The undersigned will thus assume, *only for the purpose of the present review*, that Plaintiff can establish a "continuing violation," which may extend the limitations period. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001); *Robinson v. U.S.*, 327 F. App'x 816, 818 (11th Cir. 2007) ("The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period."); *see also e.g.*, *Watson v. Sisto*, No. 2:07–cv–01871 LKK KJN P, 2011 WL 533716, *11 (E.D. Cal. Feb. 14, 2011) (applying continuing violation doctrine to allow prisoner's claim of ongoing inadequate medical care);   *K'Napp v. Hickman*, No. CIV S-05-2520-FCD-CMK-P, 2008 WL 495755, *6 (E.D. Cal. Feb. 21, 2008) (finding no limitations bar to claims of "ongoing violations as the result of a 'campaign' or policy of retaliation that persists 'unabated'").

With this in mind, the undersigned now turns to Plaintiff's "Claims for Relief." When construing Plaintiff's Amended Complaint liberally, as the undersigned is required to do at this stage, it appears that Plaintiff's claims may be categorized as follows: (1)

claims challenging the conditions of Plaintiff's confinement under the Eighth Amendment (Amnd. Compl. at ¶¶ 185, 187 & 195); (2) claims for denial of procedural due process under the Fourteenth Amendment (*Id*. at ¶¶ 187, 190 & 191); (3) claims for conspiracy to deprive Plaintiff of his constitutional rights under the First and Eighth Amendments (*See id*. at ¶¶ 180-183; 185); (4) claims for retaliation under the First Amendment (*Id*. at ¶ 180); (5) claims for deliberate indifference to his serious medical needs under the Eighth Amendment (*Id*. at ¶¶ 182, 183, 186 & 194); (6) claims for deliberate indifference to his health and safety under the Eighth Amendment (*Id*. at ¶¶ 184; 193 & 196); (7) claims for deprivation of property under the Fourteenth Amendment (*Id*. at ¶ 192); (8) claims for denial of access to the courts under the First Amendment (*Id*. at ¶ 181); (9) claims for violations of his right to freedom of speech under the First Amendment; and (10) claims for denial of equal protection under the Fourteenth Amendment (Id. at ¶ 189).

## 1. **Eighth Amendment Claims, General Conditions of Confinement**

Allegations of unconstitutional conditions of confinement permeate Plaintiff's Amended Complaint. Plaintiff's claims arise out of the alleged conditions in the Hi Max (or maximum security classification) unit at the Georgia Diagnostic and Classification Prison. The Amended Complaint alleges that, in the Hi-Max unit, (1) the cell doors are surrounded by metal strips to prevent communication between inmates (Amended Complaint at ¶¶ 41 & 187); (2) night lights are the only lights allowed for reading at night (*Id*. at ¶¶ 42 & 187); (3) physical exercise is limited to twice a week (*Id*. at ¶¶ 43, 139 & 187); (4) showers are limited to three times per week (*Id*. at ¶ 187); (5) personal property is confiscated (*Id*. ¶¶ at 43, 139 & 187); (6) visitation is required to take place through a glass

wall and is sometimes denied (*Id*. at ¶¶ 45, 47, 139, & 187); (7) meals are reduced to three courses and bread is not served with the meals (*Id*. at ¶¶ 46 & 106-107); (8) prisoners are handcuffed and shackled whenever they are removed from their cell and are subjected to strip and cavity searches (*Id*. at ¶ 50); (9) day light is blocked in the cells; black paint and boxes cover the windows (*Id*. at ¶¶ 51 & 187); (10) commissary purchases can be restricted (*Id*. at ¶ 139); (11) clothing may be limited to three boxers, three t-shirts, and one jumpsuit, no tennis shoes (*Id*.); and (12) programs necessary for prisoners to become parole eligible are denied (*Id*. at ¶ 187).

The cruel and unusual punishments standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted).   Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The Constitution does not mandate comfortable prisons. *Id.*   Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities."   *Id.* at 347.

Therefore, to prevail on a conditions of confinement claim, a plaintiff must first show that the challenged conditions are objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's

necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834)). This standard is met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler*, 379 F.3d 1289, or if society otherwise "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 37, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).   When multiple conditions are alleged, the district court must consider "the totality of the confinement conditions" to determine if the conditions evidence a constitutional deficiency.   *Wilson v. Blankenship*, 163 F.3d 1284, 1292 (11th Cir. 1998). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).   However, this is found "only when [the conditions alleged] have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." *Id.*

   In this case, even when considered collectively, Plaintiff's conditions do not evidence "extreme" deprivations, as is required to state an Eighth Amendment claim. While Plaintiff's accommodations in the Hi-Max unit certainly appear more restrictive and unpleasant than those allowed in less secure areas, none of the facts alleged describe conditions which would be considered inhumane or deprive Plaintiff of "the minimal civilized measure of life's necessities."   *See e.g.*, *Hamm v. DeKalb County*, 774 F.2d at 1575 (prisoners need only be provided "reasonably adequate food"); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (strip searches are not unconstitutional); *Overton v.*

*Bazzetta*, 539 U.S. 126, 136–37, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (withdrawal of visitation privileges "is not a dramatic departure from accepted standards for conditions of confinement"); *Milton v. Ray*, 301 F. App'x 130, 133 (3d Cir.2008) (per curiam) (loss of commissary privileges for two months was not unconstitutional); *Georges v. Ricci*, Civ. No. 07–5576, 2007 WL 4292378, at *7 (D.N.J. Dec.4, 2007) (visitation and telephone contacts with family members were not a minimal life's necessity).[1]

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987).   Although prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," and "[u]nder certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands."   *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

It is problematic, however, that Plaintiff alleges he has been subjected to these

---

[1] The restrictions about which Plaintiff complains are in fact not a dramatic departure from the accepted standards for those confined in administrative segregation.  *See e.g., Fricks v. Upton*, No. 5:10–CV–458 (MTT), 2011 WL 3156680 at * 3 (M.D. Ga. April 14, 2011) (allegations that plaintiff was only allowed to shower three times a week, was handcuffed every time he was moved within the prison, was denied library call and educational opportunities, and was forced to wear his hair "bald" were not   "sufficiently serious" to constitute cruel and unusual punishment); *Garcia v. Cameron*, No. 2:10–cv–487–FtM–29DNF, 2010 WL 5477765 at *3 (M.D. Fla. Dec. 30, 2010) (allegations that prisoner was afforded only 30 minutes of outside physical exercise, three times a week, 15 minute showers three times a week, and 15 minute shaves and/or haircuts three times a week were not "the type of deprivation of life's necessities to rise to an Eighth Amendment violation").

"punitive" conditions for "nearly twelve years" and that this caused him to "physically and mentally deteriorate." (*See id.* at ¶¶ 48, 85, 167, & 185).  Plaintiff claims that the sheer *length* of his confinement in administrative segregation[2] violates his Eighth Amendment rights against cruel and unusual punishment (Amd. Compl. at p.1 & ¶185).

The court certainly cannot ignore "the length of confinement . . . in deciding whether the confinement meets constitutional standards." *Sheley*, 833 F.2d at 1429 (finding that inmate's 12-year confinement in administrative segregation raised serious constitutional questions) (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)).  Segregation over a significantly extended period of time, coupled with other factors such as a lack of exercise, may raise Eighth Amendment concerns, especially when the inmate alleges that the segregation was "punitive" in nature and caused "mental and physical deterioration." *Id.* at 1429-30.  In light of these concerns, the undersigned finds that it would be premature to dismiss Plaintiff's claims arising from the long term confinement in close management administrative segregation prior to service.  *See Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir. 1987) (dismissal of Eighth Amendment claims by inmate facing prolonged confinement in segregation was premature).   Plaintiff's Eighth Amendment conditions of confinement claims against Defendants **Hall, Upton**, and **Humphrey** (Amd. Compl. at ¶ 185) may go forward.

It is **RECOMMENDED**, however, that any conditions of confinement claims Plaintiff intended to bring under the generalized notion of "substantive due process" of the

---

2. Plaintiff is presumably combining his time in GSP and Hi-Max. (*See* Amd. Compl. at ¶ 185) ("My uninterrupted punitive lockdown for nearly twelve years (since Sept. 2001) has been the direct cause of my physical and mental deterioration.").

Fourteenth Amendment be **DISMISSED** with prejudice.  A claim shall not be asserted under the notion of substantive due process, when a constitutional amendment "provides an explicit textual source of constitutional protection against" that claim. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  The Eighth Amendment provides a source of protection for Plaintiff's claims related to the conditions of his confinement.  *See Rhodes*, 452 U.S. at 345.  Thus, any duplicative "substantive due process" claims (*See* Am. Compl. at ¶191) must fail.

### 2.  Fourteenth Amendment Claims, Denial of Procedural Due Process

In his Amended Complaint, Plaintiff also alleges that Defendants **Hall**, **Humphrey**, and **Upton** are not only aware and responsible for his extended time in punitive segregation but that that a these Defendants, along with Defendant **Caldwell** and **Malone** are also responsible for placing, transferring, and/or keeping him in "lockdown" without affording him the requisite notice or opportunity to be heard.  (*See* Amd. Compl. at ¶¶ 187, 190-192).  Plaintiff specifically alleges that Defendant Upton ordered his transfer to the Hi-Max unit without any notice or opportunity to be heard in January of 2008, (*Id.* at ¶ 17) and that Defendant Hall thereafter refused to respond to Plaintiff's classification appeal (*Id.* at ¶ 20).  However, in May of 2008, after he was involved in an alleged security breach, Plaintiff was briefly transferred out of the Hi-Max unit and back to GSP as a "sleeper." (*Id.* at ¶24).

Plaintiff returned to Hi-Max shortly thereafter, in November of 2008, until his re-classification and release from Hi-Max in March 2010. During these 14 months, Plaintiff's classification appeals were refused by Defendant Upton, and Defendants

Malone and Caldwell (members of the classification committee) allegedly failed to have Plaintiff present at his initial classification hearing or to conduct the required interviews or hearings thereafter. (*Id.* at ¶¶ 37-39).   The classification committee nevertheless released Plaintiff from Hi-Max on March 24, 2010, but Defendant Upton allegedly ordered his transfer back to Hi-Max, without notice, a few months later in August of 2010.   (*Id.* at ¶¶¶ 66-72).   Plaintiff appealed this transfer, and the classification committee held subsequent hearings without Plaintiff being present and officially placed Plaintiff back into Hi-Max in September of 2010.   (*Id.* at ¶¶ 72, 74, 76).   Defendants Upton and Humphrey allegedly failed to respond to Plaintiff's later appeals.   (*Id.* at ¶¶ 84, 95).   Plaintiff is apparently still confined at Hi-Max, though it appears that his security level within the unit was addressed in March of 2013 and increased because of an alleged disciplinary infraction. (*Id.* at ¶ 165).

It is well-settled that prisoners have no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison. *See Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate); *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (prison officials have full discretion to control conditions of confinement, including prisoner classification) (citing 18 U.S.C. § 4081)).   However, a prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation if the placement (1) "will inevitably affect the duration of his sentence;" or (2) "imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 472 at 484.

As a general rule, the placement of a prisoner in segregation for a reasonably short period, such as thirty days, does not implicate a protected liberty interest as it does not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486. On the other hand, the transfer of a prisoner into administrative segregation for a period of years may impose an atypical hardship, entitling him so some measure of due process. *See Williams v. Fountain*, 77 F.3d 372, 374–75 (11th Cir. 1996) (assuming that one-year in solitary confinement triggers procedural due process protections under *Sandin*).

The extended duration of Plaintiff's confinement in administrative segregation distinguishes this case from others in which no liberty interest was violated. *See Morefield v. Smith*, No. CV607-010, 2009 WL 36673 at * 8 (S.D. Ga. Jan 5, 2009); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). The undersigned thus concludes that Plaintiff's allegations are at least sufficient to survive a frivolity review. Although further factual development of these claims is necessary, Plaintiff's procedural due process claims (Amd. Compl. at ¶¶ 187, 190, 192) will be allowed to go forward against Defendants **Hall**, **Humphrey**, **Upton**, **Caldwell** and **Malone**.

It is **RECOMMENDED**, however, that the same due process claims against Defendants **Ward**, **Mintz**, and **Bishop** be **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1). Although the "Claims for Relief" section of Plaintiff's Amended Complaint asserts that these Defendants have also violated his due process rights, the body of the Amended Complaint does not contain any facts that

specifically connect Defendants Ward, Mintz, or Bishop to a denial of procedural due process. (*See* Amd. Compl. at ¶¶ 7-179).   Plaintiff's "Statement of Facts" in fact makes no reference to Timothy Ward (Deputy Commissioner for the Department of Corrections), and it is well-settled that §1983 may not be imposed under a theory of respondeat superior. *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004).   The single factual allegation against Defendant Mintz only suggests that Mintz was aware that inmates in the Hi-Max unit planned a "take over" (*See* Am. Compl. at ¶ 22).   Plaintiff fails to state any facts to suggest that Mintz was personally responsible for denying him due process.

The same is true for Plaintiff's allegations against Defendant Bishop. Plaintiff makes many allegations against Defendant Bishop, including a claim that Bishop falsified documents which resulted in his being placed in disciplinary confinement (*Id*. at ¶¶ 114-115, 156); however, this action does not, in and of itself, amount to a constitutional violation.   *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout*, 808 F.2d 949, 951–53 (2nd Cir. 1986).   A constitutional violation would occur only if Plaintiff was subsequently denied due process at an institutional hearing. *See id*.   The Amended Complaint does not attach Defendant Bishop to any subsequent deprivation of procedural due process.   Any claim arising out of Defendant Bishop's alleged involvement with the implementation of more restrictive procedures in the Hi-Max unit likewise fails (*See* Am. Compl. at ¶136).   Plaintiff simply does not provide sufficient allegations about Defendant Bishop's involvement in the matter to state a procedural due process claim.   "A bare, conclusory allegation . . . is insufficient, without more, to warrant further . . . consideration." *Taylor v. Singletary*, 148 F.3d 1276, 1285 (11th Cir. 1998).

### 3.  **Conspiracy Claims**

Though Plaintiff's Amended Complaint does not include a separate conspiracy count, it is nonetheless peppered with allegations of "conspiracy."  Plaintiff generally alleges that Defendants (in various combinations and at various times) conspired to violate his constitutional rights.  The Complaint states: (1) that Defendants responded to his grievances through "conspiratory acts and omissions" (Am. Compl. at ¶¶ 34, 109, 114); (2) that the conditions of his confinement are due to a "wide spread conspiracy to hold in [him] in retaliatory lockdown" (*Id.* at ¶48); (3) that "the named defendants entered an agreement to deny [him] needed pain medication" (*Id.* at ¶61) and "conspired to deny [him] medical care" (*Id*. at ¶97); (4) that Defendants "acted in conspiration [sic] attempting to conceal evidence" (*Id*. at ¶ 101, 103, 114, 119); and (5) Defendants "entered an agreement through conspiratory acts" to label Plaintiff as an informant (*Id*. at ¶ 120).

Although this theory a conspiracy (or multiple conspiracies) among Defendants underlies all of Plaintiff's claims, Plaintiff, as demonstrated above, only makes vague and conclusory allegations of conspiracy.  "Allegations of conspiracy must be specific and based upon facts rather than conclusions."  *Van Bethel v. Carter*, No. 5:12–cv–01153–RDP–HGD, 2012 WL 5932682 at *2, (N.D. Ala. Oct. 12, 2012).  "It is not enough to simply aver in the complaint that a conspiracy existed."  *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).  To state a conspiracy claim under § 1983, a plaintiff must (1) show that the defendants had a "meeting of the minds" or reached an understanding to violate his rights and (2) prove an actionable wrong to support the conspiracy. *Bailey v. Board of County Comm'rs of Alachua County, Fla*., 956 F.2d 1112, 1122 (11th Cir.1992).

"[T]he linchpin for conspiracy is agreement, which presupposes communication...." *Id.*

Plaintiff's Amended Complaint does not offer any specifics as to when or how an agreement among any Defendants may have been reached. Plaintiff's self-serving, conclusory statements that Defendants "reached an agreement" or conspired against him are simply not enough to state a claim. *See Iqbal*, 556 U.S. at 663 ("Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."); *Fullman*, 739 F.2d at 556–57 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."). For these reasons, it is **RECOMMENDED** that any conspiracy claims be **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. §1915A.

### 4. <u>First Amendment Claims, Retaliation</u>

The next most prevalent accusation in Plaintiff's Amended Complaint is that Defendants' adverse decisions and conduct were retaliatory. Indeed, it appears that almost every action is alleged to be retaliation for Plaintiff's engaging in some type of protected activity. (*See* Am. Compl. at ¶180). Plaintiff broadly alleges that he has "endured for years" "widespread and malicious retribution . . . due to the filing of grievances, other complaints and accessing the courts." (*Id*. at ¶179). This "wide spread retribution" allegedly includes (1) his being placed in punitive lockdown (*Id*. at ¶15); (2) his being transferred to Hi-Max (*Id*. at ¶¶ 19, 71); (3) his being denied a waist chain profile (*Id*. at ¶¶ 36); (4) his being denied medical care (*Id*. at ¶¶ 35, 36, 56); (4) his being denied access to the telephone (*Id*. at ¶ 149); (5) his being subjected to "shakedowns," property loss, and planted contraband (*Id*. at ¶ 151, 152, 156); (6) his being labeled an "informant"

(*Id.* at ¶169); (7) his mail being withheld, read, and destroyed (*Id.* at ¶¶ 131, 176, 178); (8) his being charged excessive medical co-pay charges (*Id.* at ¶180); and (9) the falsification of documents (*Id.* at ¶ 109, 114).

It is well-settled that a prison official may not retaliate against an inmate for engaging in conduct protected by the First Amendment.  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).   However, a prisoner's claims of retaliation are generally examined "with skepticism and particular care," as courts recognize both the inevitability that prisoners will take exception to acts by prison officials and "the ease with which claims of retaliation may be fabricated."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir 1995).

Thus, to state a cognizable retaliation claim, a prisoner "must come forward with more than 'general attacks" on a prison official's motivations.  *Robinson v. Boyd*, No. 5:03CV25/MMP/MD, 2005 WL 1278136 at *3 (N.D. Fla. May 26, 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)).   His complaint must allege a causal connection between his protected conduct and the prison official's alleged retaliatory action.  *See id*; *see also, Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   This may be accomplished by either alleging direct evidence of retaliatory intent or by describing "a chronology of events which may be read as providing some support for an inference of retaliation."  *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *see also*, *Robinson v. Boyd*, No. 5:03CV25/MMP/MD, 2005 WL 1278136 at *3 (N.D. Fla. May 26, 2005) (temporal proximity of alleged retaliatory act to protected conduct may serve as circumstantial evidence of retaliation).

Plaintiff's grievances, lawsuits, and participation in a prison investigation and

hunger strike are likely forms of "protected" conduct.  Even so, Plaintiff's Amended Complaint largely fails to allege facts demonstrating any causal connection between the protected conduct and the retaliatory actions alleged.  Plaintiff simply makes statements like "my grievances and accessing the courts [were] the reasons I continued to be held in punitive lockdown" (Amnd. Compl. at ¶15) and "Defendants . . . continued to deny my needed profile and other medical care as retribution for filing grievances, participating in [an] investigation, . . . and other redress of grievances" (*Id.* at ¶36).  Plaintiff's conclusory statements that Defendants' conduct was retaliatory, without more, are insufficient to state a valid retaliation claim. *See also, e.g., Akins v. Perdue*, 204 F. App'x 839, 843 (11th Cir. 2006) (prisoner failed to state retaliation claim when he failed to allege any facts from which causal connection could be reasonably inferred); *Brazill v. Cowart*, 2011 WL 900721 at *3 (M.D. Fla. March 14, 2011) (prisoner failed to allege facts suggesting a causal connection between the transfer and protected conduct).

After a painstaking review of each one of Plaintiff's many allegations of retaliatory conduct, the undersigned can find only one in which Plaintiff may have satisfied the requirements for stating a retaliation claim.  The Amended Complaint alleges that Plaintiff filed a grievance against Defendant Bishop on January 17, 2013, and that he was subjected to a "retaliatory shakedown," shortly thereafter, "per the orders of Defendant Bishop," in which his legal papers were "scattered."  The following month, Defendant Bishop questioned whether Plaintiff was going to continue assisting other inmates with their legal complaints.  Plaintiff indicated that he would, and then two *hours* later, Plaintiff was subjected to a second "retaliatory shake down."  (*See* Am. Compl. at ¶¶

154-155).   When accepting these allegations as true and viewing them in the light most favorable to Plaintiff, the undersigned finds that, for the purpose of a frivolity review, Plaintiff has sufficiently described "a chronology of events which may be read as providing some support for an inference of retaliation." *McDonald*, 610 F.2d at 18.

Other allegations, however, fall short of stating a retaliation claim, even though Plaintiff may have generally alleged a temporal proximity among events.   For example, the Amended Complaint alleges that Plaintiff participated in a hunger strike on June 11, 2012, to challenge the denial of "classification hearings, notices, confiscation of properties, notices, confiscations of properties, physical beatings, illegal housing, [and the] denial of medical care." (Am. Compl. at ¶113).   Plaintiff believes that, as a result to his participating in the "hunger strike," Defendants Humphrey, Bishop, and Gore accused of him a disciplinary offense and ordered that he be sent to punitive lockdown without a hearing. (Id. at ¶¶ 114-115).   Again, Plaintiff fails to provide the exact dates of the disciplinary sanction, but he does allege that he filed a related grievance in July of 2012.

Even so, nothing in the Amended Complaint explains which defendant actually took the retaliatory action or alleges proof of conspiracy.   The Amended Complaint also fails make a plausible showing that Defendants were actually aware of Plaintiff's participation in the hunger strike (and the multitude of reasons therefor) before the disciplinary sanction was imposed.   The mere fact that one event occurred before the other, standing alone, does not give rise to an inference that Defendants' acted with a retaliatory motive.   In the absence of allegations describing the exact retaliatory action taken by each defendant and facts establishing retaliatory motive, Plaintiff's claim fails.   *See e.g.*, *Thomas v. Warner*,

237 F. App'x 435, 438 (11th Cir. 2007) (claim properly dismissed where prisoner failed to allege facts showing grievances motivated disciplinary report).

Plaintiff's allegation that Defendant Upton transferred him to the Hi-Max unit because he filed a "T.R.O." (Am. Compl. at ¶70) rests on even shaker grounds.   Plaintiff provides no allegations demonstrating a clear temporal proximity between these events or that Defendant Upton was personally aware of Plaintiff's protected conduct prior to the transfer.   These allegations are thus plainly insufficient to state a claim for retaliation. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) ("complaint must contain enough facts to state a claim of retaliation by prison officials that is plausible on its face").

For these reasons, only Plaintiff's First Amendment retaliation claim against Defendants **Bishop** will be allowed to go forward.   It is **RECOMMENDED** that all other retaliation claims – and specifically those against Defendants **Upton, Humphrey, Hall, Ward, Fields, Gore, Malone, Caldwell, Smith, Burnside, Finderson, Graves, Lewis, Lyles, Forrest, Means, Mintz, Johnson,** and **Barber** (Am. Compl. at ¶ 180) - be **DISMISSED** without prejudice for failure to state a claim.

### 5.  Eighth Amendment, Deliberate Indifference to Serious Medical Needs

Plaintiff's Amended Complaint is also filled with allegations that Defendants violated his Eighth Amendment right to adequate medical care by refusing to issue a waist chain profile, denying needed pain medication, refusing to treat injuries, and refusing to provide an orthopedic follow-up.   (Am. Comp. at ¶¶ 182, 183, & 186).

To state a claim for inadequate medical care under the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff's allegations must satisfy both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds, H*ope v. Peltzer*, 536 U.S. 730, 739 (2002). A plaintiff must first allege evidence of an objectively serious medical need that, left unattended, poses a substantial risk of serious harm. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Hill*, 40 F.3d at 1187.

In this case, Plaintiff only alleges two injuries: an injured shoulder and an injury that caused some swelling to his face and eye. Plaintiff specifically alleges that he has been diagnosed with "chronic tendonitis and degenerative joint disease of the right shoulder, . . . AC joint hypertrophy . . ., and a small incomplete tear" (Am. Compl. at ¶ 99), which causes him to suffer "chronic shoulder pain" (*Id*. at ¶ 96). He further alleges that the denial of a "waist chain profile" and pain medication has caused him unnecessary pain and mental suffering (*Id*. at ¶ 168). For the purpose of this review, the undersigned will presume that Plaintiff has demonstrated a serious medical need with respect to his shoulder injury. Because Plaintiff also alleges that the injury to his eye was severe enough for Unit Manager Mintz to recommend that he be provided medical care (*Id*. at ¶ 90), the undersigned will also, for the purpose of this review, presume that Plaintiff can establish this injury as a serious medical need as well.

To state a claim of deliberate indifference to a serious medical need, however,

Plaintiff must also allege facts demonstrating that a prison official acted with deliberate indifference to those needs.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  "To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence." *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal quotations omitted).

Plaintiff's allegations of deliberate indifference in this case are numerous and somewhat repetitive.   He alleges: (1) Defendant Gore, Graves, and Forrest destroyed his properly filed medical requests (*Id*. at ¶¶ 21 & 56); (2) Defendants Gore, Smith, and Finderson refused to re-issue Plaintiff a "waist chain profile," pursuant to Warden Hall's instruction (*Id*. at ¶27-33); (3) Defendants Burnside, Smith, Graves, Malone, and Gore falsified medical records and refused to provide him pain medication (*Id*. at ¶¶ 62, 86, 91-93, 96); (4) Defendants Graves, Malone, Burnside, and Smith refused to provide him with needed physical therapy for a shoulder injury, provide the waist chain profile, or an orthopedic follow up even though it was ordered by an outside orthopedist (*Id*. at ¶¶ 63-65, 86); (5) Defendant Burnside cancelled an active waist chain profile subsequently issued by an orthopedic and thereafter refused respond to Plaintiff's medical requests or issue a new profile (*Id*. at ¶ 77-81); (6) Defendant Lewis learned of Defendants' refusal to provide Plaintiff with a waist chain profile and medical treatment but failed to intervene or investigate even though she had previously informed the court that she would (*Id*. at ¶ 75, 83, 94); and (7) Defendants Gore and Forrest refused to see Plaintiff when he suffered an

injury to his eye and face (*Id*. at ¶¶ 89-90).[3]

The undersigned must, at this stage of the proceedings, accept these allegations as true, and because Plaintiff has alleged that these Defendants were aware of his presumably serious medical needs and nonetheless failed to provide him with treatment, pain medication, or a needed profile, the undersigned will permit Plaintiff's claims against Defendants **Gore**, **Smith**, **Finderson**, **Hall**, **Burnside**, **Graves**, **Forrest**, **Lewis**, and **Malone** (*Id*. at ¶¶ 183, 186, 194) to go forward.

However, because Plaintiff has identified no facts to link either Defendant **Humphrey** or **Upton** to any of the acts or omissions alleged above, the undersigned **RECOMMENDS** that Plaintiff's Eighth Amendment medical care claims against these individuals be **DISMISSED** without prejudice for failure to state a claim.

### 6.  Eighth Amendment Claim, Deliberate Indifference to Health & Safety

Plaintiff also appears to state claims against various other prison officials based on their alleged deliberate indifference to his health and safety (*Id*. at ¶¶ 184, 193, 196). Plaintiff generally asserts (1) that Defendants Bishop and Means, with the assistance of Defendant Carter, intentionally and falsely labeled him as an "informant" which resulted in Plaintiff receiving "death threats" from other inmates (*Id*. at ¶¶ 120-22, 163-64, 169-184-196); and (2) that Defendants Hall, Humphrey, Upton, Ward, and Malone fail to staff medical personnel in the Hi-Max unit at night or to provide an infirmary or adequate

---

3  Plaintiff also vaguely asserts that he suffered "pain and injury" as a result of "significant delays" in being seen by a physician (Id. at ¶57), and that he filed more than twenty-four medical requests and was never seen by a physician (Id. at ¶58), though Plaintiff never specifies for what injury he was seeking care.

life-saving equipment in the Hi-Max unit at any time (*Id*. at ¶ 53-55, 193).

It is clear that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Prison officials thus have a duty to protect prisoners from assault by other inmates and to provide adequate medical care.   However, even if Plaintiff's allegations are true, he has failed to state a claim for relief under §1983.   Prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain.   *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citations omitted).

Plaintiff does not claim to have personally suffered any physical harm or pain as a result of Defendants' allegedly labeling him as an informant.   The act of telling other inmates that Plaintiff is an informant, without more, does not rise to the level of a constitutional violation.   *Sepulveda v. Burnside*, 170 F. App'x 119, 124 (11th Cir. 2006). Plaintiff's vague allegation that he has received "death threats" as a result of this label does not assist his case.   The Constitution is not offended by inmates being forced to live with the verbal taunts of other inmates. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989) (prisoner "must allege more than that he has been subjected to "verbal taunts.... [h]owever distressing" in order to make a claim that jailers have violated . . . his constitutional rights.").   Verbal threats, standing alone, do not pose a serious risk to the prisoner's health or safety under the Eighth and Fourteenth Amendments. *See Evans v. City of Zebulon, Ga.*, 351 F.3d 485, 495-496 (11th Cir. 2003).

And while Plaintiff does allege that he and others have "suffered serious

complications and injuries" at night because of the absence of medical personnel (Amd. Compl. at ¶53), Plaintiff has not alleged any facts tending to show that Defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety."   Plaintiff likewise fails to specify what injury he suffered because of the lack of medical personnel.   His allegations thus fail state a claim upon which relief may be granted.   *See e.g., Mapp v. Georgia Dept. of Corr.*, No. CV612–024, 2012 WL 2127332 at *2 (S.D. Ga. May 15, 2012) (conclusory allegations regarding defendants' "deliberate indifference in inflicting, and allowing to be inflicted, serious physical injury and mental anguish upon plaintiff" was insufficient to state a claim); *O'Connor v. Carnahan*, 2012 WL 2201522 at *13 (N.D. Fla. March 27, 2012) ("a conclusory allegation that the prisoner suffered serious injury should be discounted").

For these reasons, it is **RECOMMENDED** that Plaintiff's remaining claims of deliberate indifference – and specifically those against Defendants **Bishop, Means, Carter, Humphrey, Upton,** and **Ward** – also be **DISMISSED** without prejudice for failure to state a claim.

### 7.  Fourteenth Amendment Claims, Deprivation of Property

Plaintiff's Amended Complaint further includes Fourteenth Amendment claims for the wrongful taking of his property (Am. Compl. at ¶¶ 192).  Plaintiff alleges officers confiscated his property "through arbitrary procedures" (*Id*. at ¶19, 153); that Defendant Gore overcharged his prison account for medical copays (*Id*. at ¶ 87); and that supervisory officials failed to properly respond to his complaints about the same (*Id*. at ¶ 192).

Even if Plaintiff's allegations are true, the Due Process Clause of the Fourteenth

Amendment is not violated when a state employee intentionally deprives an individual of property, provided that the state makes available a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Georgia provides at least two potential post-deprivation remedies. *See* O.C.G.A. §§ 51-10-1 through 51-10-6 (providing cause of action for injuries to property); and O.C.G.A. §§ 28-5-80 through 28-5-86 (providing for a claim against the state or any of its agencies). Thus, because Georgia provides Plaintiff with a meaningful post-deprivation remedy, the alleged taking of Plaintiff's property does not state a claim for relief under § 1983.

It is therefore **RECOMMENDED** that Plaintiff's Fourteenth Amendment deprivation of property claims be **DISMISSED** for failure to state a claim.

### 8. First Amendment Claims, Access to the Courts

Plaintiff's "Claims for Relief" section also includes a claim for denial of access to the courts under the First Amendment. Therein, Plaintiff alleges that Defendants Humphrey and Bishop unlawfully "censored and stole" his legal mail and, on one occasion, destroyed correspondence from the Eleventh Circuit Court of Appeals, denying him the ability to file an appeal in that court (Am. Compl. at ¶¶ 126-29, 145-46, 181, 188).

A prison official's interference with a prisoner's legal mail implicates his "rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Corker v. Cannon*, 2008 WL 1847304 at *2 (M.D. Fla. April 24, 2008) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003)). A prisoner raising a First Amendment access-to-court claim "must show actual injury in the pursuit of specific types of non-frivolous cases: direct or collateral attacks on sentences and challenges to

conditions of confinement." *Wilson*, 163 F.3d at 1290.   "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (citation omitted).

Even if a prisoner can show an actual injury, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Corker*, 2008 WL 1847304 at *2.   However, after viewing the above allegations in the light most favorable to Plaintiff, the undersigned has determined that Plaintiff's First Amendment claim against Defendants **Humphrey** and **Bishop** should be allowed to proceed beyond the frivolity review stage.

It **RECOMMENDED** that any other claims arising out the alleged interference with Plaintiff's legal mail – and specifically those against Defendants **Hall, Caldwell, Lewis, Smith, Johnson, Barber** and **Fields** – be **DISMISSED** without prejudice for failure to state a claim.   Though Plaintiff's "Claims for Relief" associates Defendants Hall, Caldwell, Lewis, Smith, Johnson, and Barber with an "access to the courts" claim, Plaintiff's allegations fail to connect any of these individuals to the alleged theft and destruction of the Eleventh Circuit order.   Plaintiff also failed to state a §1983 claim for relief against Defendant **Fields**, which apparently arose out of her alleged failure to respond to his requests for information or later investigate the matter.   A supervisory official cannot be held liable under §1983 for simply failing to respond to a prisoner's inquiry or request.   *See Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982). Likewise, "the failure to investigate an accident/incident, without more, does not violate any constitutional rights." *Wright v. City of Ozark*, 715 F.2d 1513, 1516 (11th Cir. 1983).

To the extent that Plaintiff also intended to state a First Amendment claim based on

his limited access to legal materials (Amend. Compl. at ¶181), the undersigned finds that he has failed to allege sufficient facts to state such a claim.   Plaintiff only alleges that the Hi-Max unit does not contain a satellite law library, the available library limits him to "two cites per week," and the librarian is not trained in the law.   (*Id.* at ¶¶ 142-144).

While it may be contrary to Plaintiff's understanding of constitutional law, there is no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).   A prisoner alleging a lack of access to a law library must show that he has suffered an actual injury.   To show actual injury, Plaintiff would have to demonstrate that the lack of access to the law library has hindered his efforts to pursue a specific legal claim that challenged either Plaintiff's conviction (directly or collaterally) or his conditions of confinement. *Id.* at 354-55.   Plaintiff has not alleged any such injury.   It is thus **RECOMMENDED** that any First Amendment claims arising from an alleged lack of access to legal materials be **DISMISSED** without prejudice for failure to state a claim.

### 9.   Free Speech

Though mislabeled in the Amended Complaint as an "access to the court's claim," Plaintiff also plainly alleges that his constitutional rights have been violated by Defendants' interference with his personal mail (Am. Compl. at ¶ 181).   In the body of his Complaint, Plaintiff contends that a corrections officer, Defendant Johnson, picked up his "personal letter" and provided it to Defendants Humphrey and Bishop, who later used "this personal mail" to their advantage in a civil deposition and to convince other inmates that Plaintiff was an informant against them (*Id.* at ¶ 159-162, 175-178).

Though this claim is based on the theft of personal, rather than legal,

correspondence, the First Amendment still protects a prisoner's general "right to send and receive mail." *Corker*, 2008 WL 1847304 at *2 (citing *Al Amin*, 511 F.3d at 1333).   While "prison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights," *Gaines v.. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986), this general security interest will not justify a regular or malicious practice of mail interference.   *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).

When viewed in the light most favorable to Plaintiff, the allegations in the Amended Complaint suggest that Defendants Humphrey and Bishop "regularly and unjustifiably" interfere with Plaintiffs incoming and outgoing mail and potentially obtained his personal mail for their own benefit or to harm Plaintiff.   These claims against Defendants **Johnson**, **Humphrey**, and **Bishop** will thus be allowed to go forward for further factual development.   At this early stage, the undersigned cannot yet determine how Defendants will justify or explain the alleged theft and use of Plaintiff's outgoing mail.

It also appears that Plaintiff may have intended to state other First Amendment claims.   For instance, Plaintiff alleges (multiple times) that Defendant Bishop maliciously prohibited him from using the telephone (Am. Compl. at ¶ 124).   Plaintiff apparently filed a grievance, and Defendant Fields failed to investigate the matter (*Id.* at ¶ 135).

Despite their incarceration, prisoners do retain a First Amendment right to communicate with friends and family.   *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996).   Prisoners, however, have no right to unlimited telephone use. *See Washington v. Reno*, 35 F.3d 1093, 1099-1100 (6th Cir.1994).   A prisoner's right to phone access is "'subject to rational limitations in the face of legitimate interests of the penal institution.'"

*Padgett v. Mosley*, No. 2:05-CV-0608-MEF, 2007 WL 2409464 at *8 n. 2 (M.D. Ala. Aug. 20, 2007) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986)).

In this case, Plaintiff alleges that he requested phone access and that it was denied. Plaintiff has also alleged that he was without other means of communicating, due to Defendants' alleged interference with his mail and the limitations on visitation in the Hi-Max unit.   When liberally construed and accepted as true, these allegations may state a First Amendment free speech claim.   *See Acosta v. McGrady*, No. CIV.A. 96-2874, 1999 WL 158471 at *7 (E.D. Pa. March 22, 1999) ("A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him). Therefore, this claim against Defendant **Bishop** will also be allowed to go forward.

On the other hand, the undersigned recommends that Plaintiff not be permitted to proceed with any First Amendment claim based upon the alleged unavailability of a "vegan diet" at GSP.   Plaintiff does *not* purport to state a religious infringement or free exercise claim anywhere in his Amended Complaint, though he does briefly allege that he was denied vegan meals required by his "religious beliefs" in May of 2010 (Amnd. Compl. at ¶¶ 67-69).   Moreover, "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections. . . . To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."   *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *see also Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003).   Plaintiff's Amended Complaint contains no information about his alleged "religious beliefs."   It is thus **RECOMMENDED** that any claims based on an alleged infringement on Plaintiff's "religious beliefs" be **DISMISSED** without prejudice for

failure to state a claim.

### 10. **Equal Protection Claims**

The last remaining claim enumerated in Plaintiff's Amended Complaint is a claim for denial of equal protection. (Am. Compl. at ¶ 189).   The Amended Complaint generally alleges that Plaintiff has been denied privileges where other (unidentified) inmates convicted of more violent offenses or disciplinary infractions have been transferred out of the Hi-Max unit or are otherwise allowed greater freedom (Am. Compl. at ¶¶ 141, 189). However, Plaintiff does not allege any fact suggesting that he was treated differently based on a constitutionally protected interest; nor does he identify facts sufficient to state a possible "class of one" equal protection claim. *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006)). Because of this, Plaintiff has failed to state an equal protection claim.  *See id.*  It is therefore **RECOMMENDED** that Plaintiff's Equal Protection claims against Defendants **Hall, Upton, Humphrey**, **and Ward** (Am. Compl. at ¶189) be **DISMISSED** without prejudice for failure to state a claim.   *See* 28 U.S.C. § 1915A(b)(1).

### CONCLUSION

For these reasons, the undersigned will allow only the claims specified above against Defendants **Hall, Humphrey, Upton, Caldwell, Malone, Gore, Bishop, Smith, Finderson, Burnside, Graves, Forrest, Lewis,** and **Johnson** to proceed.   Because Plaintiff pre-paid the full filing fee and is not proceeding *in forma pauperis*, it is his responsibility to serve these Defendants.   The Clerk is thus **DIRECTED** to mail to Plaintiff a Rule 4 packet so that he may make service on Defendants.   Defendants are

reminded of their duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

It is **RECOMMENDED** that all other claims brought pursuant to 42 U.S.C. §1983 be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1).  Because Plaintiff has failed to state *any* cognizable claim against Defendants "**John Doe," Ward, Mintz, Means, Carter, Barber,** and **Fields**, it is further **RECOMMENDED** that these parties be **DISMISSED** from the action entirely.  Plaintiff may serve and file written objections to these recommendations with the district judge to whom this case is assigned within fourteen days after being served a copy of this Order.  *See* 28 U.S.C. § 636(b)(1).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with her custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of her lawsuit under Rule 37 of the Federal Rules of Civil Procedure.

It is hereby **ORDERED** that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants

and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the Court.

**SO ORDERED**, this 17th day of July 2013.

S/ STEPHEN HYLES
UNITED STATES MAGISTRATE JUDGE