**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

|                               |     |                             |
|-------------------------------|-----|-----------------------------|
| **DEXTER SHAW,**              | :   |                             |
|                               | :   |                             |
| **Plaintiff,**                | :   |                             |
| **vs.**                       | :   | **CASE NO: 5:12-CV-0135-CAR-MSH** |
|                               | :   |                             |
| **Warden HILTON HALL, et. al.** | : |                             |
|                               | :   |                             |
| **Defendants.**               | :   |                             |

_____

**ORDER ON RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Dexter Shaw, a state inmate currently confined at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed this *pro se* civil rights action under 42 U.S.C. § 1983.   As required by 28 U.S.C. § 1915A, the United States Magistrate Judge conducted a review of Plaintiff's Amended Complaint ("Complaint," Doc. 33) and thereafter recommended the dismissal of various claims and parties. See Order and Recommendation ("O&R"), July 17, 2013 (Doc. 40).

Plaintiff filed an Objection (Doc. 44) to the O&R and has since filed a Motion to Amend his Amended Complaint ("First Motion to Amend," Doc. 45), a Motion to Amend his Complaint and Objection ("Second Motion to Amend," Doc. 63), and a Motion to Amend/Supplement his Complaint ("Third Motion to Amend," Doc. 66). Plaintiff has also filed a Motion to Compel (Doc. 46), and a Motion for Service (Doc. 59).

All of these motions are related to the findings in the O&R.   Defendants filed responses only to Plaintiff's Third Motion to Amend and Motion to Compel. (Doc. 71 & 56).

Pursuant to 28 U.S.C. § 636(b)(1), this Court has now thoroughly considered the Recommendation of the United States Magistrate Judge, Plaintiff's objections, and his proposed amendments, and agrees with the findings and conclusions the United States Magistrate Judge.   However, in light of the additional allegations contained in Plaintiff's objections and proposed amendments, he will now be permitted to go forward with claims, as described herein, against Defendant **Bishop, Carter, Means, Fowlkes, Gore, Burnside, Adair, Caldwell, Washington,** and **M. Smith.**

The Recommendation is otherwise **ADOPTED** and **MADE THE ORDER OF THE COURT**.   For the reasons discussed herein, Plaintiff's First and Second Motions to Amend (Doc. 45 & 63) are **DENIED**; and his Third Motion to Amend (Doc. 66) is **GRANTED in part** and **DENIED in part**.   Plaintiff's Motion for Service (Doc. 59) is **GRANTED**, and thus his Motion to Compel (Doc. 46) is deemed **MOOT**.

## <u>STANDARD OF REVIEW</u>

The United States Magistrate Judge conducted the preliminary review of Plaintiff's Complaint under the authority provided by 28 U.S.C.A. § 636(b), and thus this Court is now required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations" to which Plaintiff has filed an objection.   28 U.S.C.A. § 636(b)(1).   When conducting a *de novo* review, the Court must

apply the standard required under 28 U.S.C. § 1915A.   The factual allegations must be liberally construed and accepted as true.   Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).   A *pro se* prisoner's claim must, nonetheless, be dismissed if the district court finds that his allegations, when viewed liberally and in the light most favorable to the plaintiff, fail to state a claim upon which relief may be granted.   See 28 U.S.C. § 1915A(b)(1).

To state a claim under § 1983, "the allegations in the complaint must do more than "merely create[] a suspicion [of] a legally cognizable right of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."   Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).   In order to survive a review conducted pursuant to § 1915A, a prisoner's allegations must "raise the right to relief above the speculative level" by identifying facts which create "a reasonable expectation" that discovery will reveal the evidence necessary to prove his claim.   See Twombly, 550 U.S. at 555-556.

Of course, when reviewing a *pro se* complaint with a recommendation of dismissal by the Magistrate Judge, the district court should also consider any additional or amended allegations and claims subsequently raised. See Newsome v. Chatham Cnty. Detention Cntr., 256 F. App'x 342, 344-45 (11th Cir. 2007) ("district court should have considered . . . additional allegations in the objection as a motion to amend").   Under

Rule 15, leave to amend should be free given, <u>see</u> Fed. R. Civ. P. 15(a)(2); but leave is properly denied "in the presence of countervailing factors 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of the amendment.'" <u>Shew v. Hill</u>, No. 4:13–CV–420, 2013 WL 5290005, at * 1 (N.D. Ala. Sept. 18, 2013) (quoting <u>McKinley v. Kaplan</u>, 177 F.3d 1253, 1258 (11th Cir. 1999).

## **<u>PLAINTIFF'S OBJECTIONS AND PROPOSED AMENDMENTS</u>**

With these standards in mind, Plaintiff's objections and proposed amendments will be discussed in turn below.   In so doing, the Court will take the facts from Plaintiff's many filings as best it can.   Plaintiff's Complaint, objections, and proposed amendments are lengthy, and his paragraphs often mix relevant facts, irrelevant facts, conclusory assumptions, and legal argument.   It is thus difficult to identify and review his many claims.   Some of this may be intentional on Plaintiff's part.   Even if not, it is Plaintiff's burden, not the Court's, to "to edit and organize [the] claims and supporting allegations" so that his intent can be reasonably ascertained.   <u>See Windsor v. Colo. Dep't of Corr.</u>, 9 F. App'x 967, 968 (10th Cir. 2001).   Plaintiff's *pro se* status does not exempt him from this basic pleading requirement.   <u>See</u> Fed. R. Civ. P. 8(a) (requiring "a short and plain statement"); <u>Albra v. Advan</u>, 490 F.3d 826, 829 (11th Cir. 2007) ("although we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules.").

Plaintiff was previously cautioned that he should not attempt to include, in this lawsuit, "every imaginable claim that he may have against any state official." See Order on Motions (Doc. 25) at 8.   Plaintiff has, nonetheless, attempted to do just that. Regardless, Plaintiff has now, through his many amendments, objections, and motions, had ample opportunity to make his claims, and the facts on which they are based, clear to this Court.[1]   If he has failed, Plaintiff only has himself to blame.

**1.) Claims barred by the statute of limitations**

Plaintiff's first objection is to the Magistrate Judge's recommendation that his "*claims arising out of conditions of confinement occurring prior to April 14, 2010*" be dismissed as barred by the relevant statute of limitations. See Objection at 2-3 (emphasis added). According to the Complaint, Plaintiff Dexter Shaw was housed in administrative segregation at Georgia State Prison (GSP) from sometime in 2001 until January of 2008. He was then transferred to Hi-Max at Georgia Diagnostic and Classification Prison (Hi-Max) and is still confined there.   Plaintiff's original complaint was filed on April 13, 2012, and included claims based on both his incarceration at GSP (2001-2008) and Hi-Max (2008-present).

After reviewing these claims, the Magistrate Judge did suggest that Plaintiff's claims based upon conditions occurring prior to April 14, 2010, were "generally time

---

[1] Plaintiff filed his original complaint on April 13, 2012, and has since filed a supplement (Doc. 5), a recast complaint (Doc. 33), two objections containing new allegations and re-defined claims (Doc. 44 & 63), and **seven** motions to amend his complaint (Docs. 20, 21, 22, 27, 45 63, & 66).

barred." See O&R at 4.   Plaintiff's characterization of the Magistrate Judge's recommendation is not correct, however:   The Magistrate Judge did not recommend dismissal of all claims arising prior to April 14, 2010.   The O&R only recommends that Plaintiff's Eighth Amendment claims arising from the conditions of his confinement at GSP (from 2001 through 2008) be dismissed at this stage. Id. at 4.   Because Plaintiff alleged that the unconstitutional conditions of confinement at Hi-Max (occurring between 2008 and 2010) continued into the limitations period, those claims were allowed to go forward. Id. at p. 5.   Therefore, Plaintiff's objections will be considered only in light of those claims regarding the conditions of his confinement at GSP.

In his Objection, Plaintiff first argues that his time-barred claims should not be dismissed because, "*the Magistrate Judge acknowledged that the case arises out of confinement in both GSP and the Hi-Max*" and "*that Plaintiff* [alleges he] *has been held in punitive segregation for twelve years*."   See Objection at 2 (emphasis added).   The O&R did acknowledge Plaintiff's allegations, see O&R at 3, 8-10; however, these statements are not inconsistent with the recommendations in the O&R.   The statement that Plaintiff's claims arose out of his confinement at GSP was merely a description of his attempted claims.   It was not a finding that his allegations actually stated claim for relief.   The O&R's reference to Plaintiff's alleged "twelve years" in "punitive confinement" was likewise not intended to recognize a claim based on Plaintiff's term at GSP.   Though the Magistrate Judge did accept this allegation as true, the fact was considered only to

support Plaintiff's Hi-Max claims.   See id. at 10. Even though Plaintiff's GSP claims may no longer be actionable, the duration of his prior confinement in punitive segregation may be relevant in determining whether his continued confinement in these extremely restrictive conditions is constitutional.   See Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987).

Plaintiff's suggestion that his confinement at GSP constitutes a "continuing violation" is also without merit.   Plaintiff was not subjected to the conditions at GSP after 2008, and Plaintiff has not provided any reason why he could not have brought his GSP claims prior to the expiration of the statute of limitations.   In fact, a review of court records on the U.S. District Web PACER Docket Report reveals that Plaintiff did file other complaints raising the same or similar conditions of confinement claims while he was confined at GSP.[2]  See Shaw v. Smith, 6:02-cv-0053 (S.D. Ga. 2002) Shaw v. Smith, 6:02-cv-00056 (S.D. Ga. 2002); Shaw v. Smith, 6:03-cv-00133 (S.D. Ga. 2003); Shaw v. Smith, 6:03-cv-00066 (S.D. Ga. 2003); Shaw v. Barlow, 6:05-cv-00134 (S.D. Ga. 2005); Shaw v. DuPree, 6:05-cv-0039 (S.D. Ga. 2005); Shaw v. Donald, 6:05-cv-00045 (S.D. Ga. 2005).

The Court thus finds that these objections have no merit and agrees that Plaintiff's claims arising from his confinement in GSP are time barred.   These claims are

---

2 The district court may take judicial notice of public records that are "not subject to reasonable dispute because they were capable of accurate and ready determination by resort to sources whose accuracy could not be reasonably questioned." Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010). See also, United States v. Rey, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987) (court can take judicial notice of its own records); Cunningham v. District Attny's Office for Escambia Cnty, 592 F.3d 1237, 1255 (11th Cir. 2010) (taking judicial notice of prisoner's prior state and federal court proceedings); Casey v. Scott, No. 2:11–cv–580, 2011 WL 5080294, at * 2 (M.D. Fla. Oct. 25, 2011) (taking notice of § 1983 actions previously filed).

accordingly **DISMISSED**.   Plaintiff's Second & Third Motions to Amend (Doc. 63 & 66) are also **DENIED** to the extent that he seeks to join new parties and add claims based on events occurring while he was confinement at GSP.   See Proposed Amend. Compl. (Doc. 66-1) at ¶¶ 10-80, 141, 143, 144 & 185.   These proposed amendments, which include references to conditions and events occurring at GSP, see id., would be futile. See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262–63 (11th Cir. 2004) ("district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile"); Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.").

### 2.) Claims against unidentified defendants

Plaintiff next objects to the dismissal of his claims against unnamed defendants. See Objection at 3.   This objection also has no merit.   Fictitious party pleading is not permitted in federal court.   Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). The one exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. See id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served").

As observed by the Magistrate Judge, Plaintiff's Complaint does not contain any

sort of description of the unidentified defendants.   These parties are merely represented by a blank line.   See e.g., Amend. Compl. (Doc. 33) at 3 and ¶¶ 20, 21, 34.   The Court thus agrees with the Magistrate Judge's recommendation, and these claims shall be **DISMISSED** without prejudice.   Plaintiff's Third Motion to Amend (Doc. 66) is **DENIED** to the extent that he seeks to join unnamed parties. See e.g., Proposed Amend. Compl. (Doc. 66-1) at ¶¶ 5-9, 141-144.

### 3.) Eighth Amendment general conditions of confinement claims

Plaintiff further objects to the statement in the O&R that, "*even when considered collectively, Plaintiff's conditions do not evidence 'extreme' deprivations, as is required to state an Eighth Amendment claim*."   See Objection at 4-7 (emphasis added).   The O&R does include this statement.   However, the Magistrate Judge ultimately allowed these Eighth Amendment claims to go forward.   They were not recommended for dismissal. Plaintiff's objection is thus moot.

To the extent that Plaintiff also seeks to add or supplement his Complaint with allegations regarding the conditions of his confinement, Plaintiff's Second and Third Motions to Amend (Doc. 63 & 66) are **DENIED**.   See "Statement of Facts" (Doc. 63-1); Proposed Amend. Compl. at ¶ 185.   Many of the proposed amendments involve events occurring at GSP and are time barred.   Other allegations are simply duplicative of those alleged in the Complaint. See id.   Potentially relevant allegations are also so intertwined with time-barred claims that it is difficult to distinguish one from the other.   This Court

is not required to scour these proposed amendments and attempt to separate the wheat

from the chaff, so to speak.   The proposed amendments will not be allowed.   See id. at

¶¶ 10-80 & 185.

**4.) First Amendment retaliation claims**

One of the most prevalent accusations in Plaintiff's Complaint is that Defendants'

adverse decisions and conduct were retaliatory.   Indeed, as the Magistrate Judge

observed, it appears that almost every action by a prison official is alleged to be

retaliation for Plaintiff's engaging in some type of protected activity.   Plaintiff now

attempts to save the retaliations claims recommended for dismissal and to add others.

   *a.   Retaliation claim against Defendant Hall*

With respect to his claim against Defendant Hall, Plaintiff simply re-asserts his

prior allegations.   See Objection at 8.   Plaintiff's Complaint alleges that he was

involved a security breach (he removed a key from a control door), and this led to an

internal investigation.   See Amend. Compl. at ¶¶ 23-33.   After the breach, Plaintiff was

transferred to GSP; he was later interviewed by internal affairs, and at some point

thereafter, he was transferred back to Hi-Max.   See id.   After Plaintiff returned to

Hi-Max, he filed a medical request for a waist-chain (or "front-cuff") profile because an

injured shoulder made it painful for him to have his hands cuffed behind his back.   See

id.   This request was denied because "*medical does not issue cuff profiles, per warden, that is

a security issue*." Id. at ¶ 28.   Plaintiff made subsequent requests which were denied

because "*Warden Hall states that is a security issue with the handcuffs*." Id. at ¶ 32.

The exact chronology of these events is not clear in the Complaint. Plaintiff provides only a few dates. Plaintiff also fails to allege how his interview with internal affairs was adverse to Defendant Hall or how Hall was aware of the content of his statements. Plaintiff's Complaint and Objection further fail to allege that the denial of the waist-chain profile was specific to him and not a general security policy (which could have been in place before these events). In fact, Plaintiff's Proposed Amended Complaint (Doc. 66-1) suggests that Plaintiff was not specifically targeted in retaliation, but that a memorandum was issued on April 17, 2008, "instructing 'all' medical staff not to utilize any front-cuff or waist-chain profiles." Proposed Amend. Compl. at ¶ 123.[3] If Plaintiff's facts are accepted as true, this memo was issued before Plaintiff participated in the "internal investigation" – which was sometime between May and November of 2008, see Amend Compl. at ¶24-26 – and long before Plaintiff was denied renewal of his waist-chain profile on November 24, 2008, see Amend Compl. at ¶28.

For these reasons, the Court agrees with the findings and conclusions of the Magistrate Judge: Plaintiff has not alleged sufficient facts to support an inference of retaliation against Defendant Hall. This claim is **DISMISSED** without prejudice.

    b.   *Retaliation claims against Defendants Humphrey, Bishop, and Gore*

Plaintiff's Objection also re-alleges that Defendants Humphrey, Bishop, and Gore

---

3 This memo was filed as an exhibit to Plaintiff's Motion for Preliminary Injunction (Doc. 64). See Motion, Ex. 13 (Doc. 64-14) at 1.

conspired to falsify documents and make a false disciplinary report.   See Objection at 9. In his Complaint, Plaintiff alleged that, because he participated in a "hunger strike," Defendants Humphrey, Bishop, and Gore accused him of a disciplinary offense and ordered that he be sent to punitive lockdown without a hearing.   See Amend. Compl. at ¶¶ 114-115.   This claim was addressed in detail in the O&R, see O&R at 19-20, and the Magistrate Judge found that,

> nothing in the . . . Complaint explains which [of these] defendant[s] actually took the retaliatory action or alleges proof of conspiracy. The . . . Complaint also fails make a plausible showing that Defendants were actually aware of Plaintiff's participation in the hunger strike (and the multitude of reasons therefor) before the disciplinary sanction was imposed.   The mere fact that one event occurred before the other, standing alone, does not give rise to an inference that Defendants' acted with a retaliatory motive.   In the absence of allegations describing the exact retaliatory action taken by each defendant and facts establishing retaliatory motive, Plaintiff's claim fails.

O&R at p. 19-20.

Plaintiff's Objection does not address or correct these deficiencies, and the Court agrees with the findings and conclusions of the Magistrate Judge.   See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (claim properly dismissed where prisoner failed to allege that protected activity motivated disciplinary report).   This claim is also **DISMISSED** without prejudice.

    c.   *Retaliation claims against Defendants Hall, Smith, Gore, Malone, Graves and Fields*

Plaintiff's Objection continues to allege that Defendants entered into "an agreement" with the intent to retaliate against Plaintiff.   See Objection at 8-9.   The

Objection also includes a new allegation that Gore "knowingly and through retaliation for filing grievances" excessively charged Plaintiff's account for medical services.   Id.

Plaintiff's conclusory assumptions that Defendants' conduct was retaliatory, without more, are insufficient to state a valid claim.   See Robinson v. Boyd, No. 5:03CV25/MMP/MD, 2005 WL 1278136 at *3 (N.D. Fla. May 26, 2005) (a prisoner "must come forward with more than general attacks" on a prison official's motivations) (citing Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).   "To establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008) (citing Farrow v. West, 320 F.3d 1235, 1248-49 (11th Cir. 2003)).   Plaintiff has not alleged such a connection.

The Court agrees with the Magistrate Judge's recommendation, and these claims are **DISMISSED** without prejudice.   Because Plaintiff's First Motion to Amend (Doc. 45) seeks to add these allegations against Defendant Gore, that motion is **DENIED**; the amendment would be futile.   See Hall, 367 F.3d at 1262–63.   Plaintiff's Third Motion to Amend (Doc. 66) is also **DENIED** to the extent that it seeks to add similar allegations. See Proposed Amend. Compl. at ¶¶ 128-131, 141.

   d.  *Proposed retaliation claim against Defendants Bishop, Caldwell, and Fountain*

Plaintiff's Third Motion to Amend attempts to bring a new retaliation claim against Defendants Bishop, Caldwell, and Fountain.   Id. at ¶¶ 82-84, 141, 146.   The

proposed amendments allege that Defendants Caldwell and Bishop deleted his grievance from the prison grievance management system, id. at ¶ 83, and thereby "denied him access to the grievance procedure," id. at ¶ 146. Plaintiff then lists and describes a number of grievances subsequently denied by Defendant Fountain allegedly "in retaliation" for Plaintiff's filing lawsuits. Id. at 86-90.

These amendments would also be futile. Like those discussed above, these allegations do allege a causal connection between Plaintiff's protected conduct and Defendants' alleged retaliatory actions. Plaintiff has simply made another conclusory, unsupported assumption that Defendants' conduct was retaliatory. The Court further finds that, despite his allegations, Plaintiff has no constitutional right to participate in a prison grievance procedures, see Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989), and he has failed to allege an actual injury so as to support a First Amendment claim for denial of access to the courts, see Proposed Amend. Compl. at ¶¶ 84, 91; Lewis v. Casey, 518 U.S. 343, 351-52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Thus, with respect to these proposed amendments, Plaintiff's Third Motion to Amend (Doc. 66) is also **DENIED**.

*e. Proposed retaliation claim against Defendants Upton and Humphrey*

Plaintiff's Third Motion to Amend may have also included new retaliation claims against Defendants Upon and Humphrey. Plaintiff alleges that "through retaliation" Defendants Upton and Humphrey "condoned and ordered" the placement of

"dismissed" disciplinary reports in his file which may be considered in classification decisions.   <u>See</u> Proposed Amend. Compl. at ¶135, 147.   Again, Plaintiff's conclusory assumptions and general attacks on a prison official's motivation are not sufficient to state a claim of retaliation.   <u>See</u> <u>Robinson,</u> 2005 WL 1278136 at *3; <u>Smith,</u> 286 F. App'x at 685; <u>Farrow,</u> 320 F.3d at 1248-49.   Therefore, if Plaintiff has moved to add this claim, the proposed amendment would be futile, and the Motion (Doc. 66) is **DENIED**.

**5.) Eighth Amendment claims based on inadequate medical staffing**

Next, Plaintiff objects to the dismissal of his claims based on Defendants' alleged failure to adequately staff medical personnel in the Hi-Max unit.   In his Objection, Plaintiff alleges that, since the O&R was issued, an inmate in Hi-Max died because of the inadequate medical staffing.   <u>See</u> Objection p. 10.   The Objection then re-states those allegations made in the Complaint regarding the alleged inadequate medical staffing and facilities in Hi-Max.   <u>See</u> <u>id.</u> at 10-11.

The Magistrate Judge did not find these allegations sufficient to state an Eighth Amendment claim.   Although Plaintiff vaguely alleges that he and others have "suffered serious complications and injuries" because of the absence of medical personnel, <u>see</u> Amd. Compl. at ¶ 53, Plaintiff did not sufficiently allege "any facts tending to show that Defendants 'knew of and disregarded an excessive risk to Plaintiff's health or safety.' Plaintiff likewise fail[ed] to specify what injury he suffered because of the lack of medical personnel."   <u>See</u> O & R at 24 (original alterations omitted).

The Court does not find any merit in Plaintiff's objection to the dismissal of this claim.   Plaintiff obviously cannot state a claim for the death of another inmate, and even Plaintiff is attempting to state a claim on his own behalf, his Objection also fails to allege sufficient facts to show that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety, as is necessary to state an Eighth Amendment claim of deliberate indifference.   See Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003).   The Court agrees with the Magistrate Judge's recommendation, and the claim shall be **DISMISSED** without prejudice.

Plaintiff's Third Motion to Amend (Doc. 66) is likewise **DENIED** to the extent that his Proposed Amended Complaint (Doc. 66-1) includes an Eighth Amendment claim based on Defendants' alleged failure to provide him with medication during Ramadan, a religious period observed by Plaintiff.   See Proposed Amend. Compl. at ¶¶ 111-120. Plaintiff alleges that this failure "was caused [by] the inadequate medical staffing."   Id. at 120.   Medical staff was apparently not on duty prior to daylight and thus could not dispense medication at the time necessary during Ramadan.   See id.

The addition of an Eighth Amendment claim based on these facts would futile. Plaintiff has failed to allege facts showing either (1) "an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm," or (2) "that the [defendants'] response to that need was poor enough to constitute an unnecessary and wanton infliction of pain . . . ." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)

(quotation marks and ellipsis omitted).   Plaintiff was in fact provided medication; it was just not provided at the time Plaintiff requested during Ramadan.   Therefore, Plaintiff has only alleged a deliberate indifference to his religious beliefs, and not necessarily an indifference to his medical needs.   These allegations are better suited for a claim under the First Amendment, as discussed below.

6.) **Proposed religious infringement claims**

Through his Third Motion to Amend, Plaintiff attempts to bring entirely new religious infringement claims based on events occurring since his Complaint filed.   As noted above, Plaintiff now alleges that Defendants violated his rights in July of 2013 by refusing to provide him with his medication before daylight as is necessary during Ramadan.   See Proposed Amend. Compl. at ¶¶ 111-120, 142.   Plaintiff also proposes a new claim based on expanded allegations of a denial of adequate nutrition. See Id. at ¶¶ 101-110, 132-134, 142.   Plaintiff alleges that during Ramadan, in July of 2013, Defendants Caldwell, Washington, and Bishop failed to provide him with sufficiently nutritious meals and refused to serve meals during the times at which inmates observing Ramadan could eat. Id.   These denials allegedly caused Plaintiff "pain," led to "unnecessary weight loss," and "deprived [him] of the qualitative experiences of the holy month of Ramadan."   See id. at ¶ 142.

The First Amendment prohibits prison officials from imposing a substantial burden on the free exercise of an inmate's "sincerely held" religious belief unless their

actions or restrictions are "reasonably related to legitimate penological interests.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348–53, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Section 3(a) of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), § 2 et seq., 42 U.S.C.A. § 2000cc et seq., likewise "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

At this stage of the litigation, the Court cannot yet determine whether Defendants imposed a "substantial burden" on Plaintiff's religious practice or what Defendants' justifications for their actions may be.   Thus, the amendment does not appear futile.

In in their Response (Doc. 71) to Plaintiff's Third Motion to Amend, Defendants have objected to this amendment on the basis of exhaustion.   The Proposed Amended Complaint clearly alleges that these events occurred in July of 2013 – which is well after the filing of Plaintiff's original complaint on April 13, 2012.   Therefore, as Defendants assert in their Response, such claims could not have been exhausted before Plaintiff originally "brought" this civil rights action.   See 42 U.S.C. § 1997e(a); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (interpreting the term "brought"—as used in section 1997e(a)—to mean "the filing or commencement of a lawsuit, not . . . its continuation").

Defendants are correct that an amended complaint will not typically cure the failure to exhaust administrative remedies prior to filing suit.   See Smith v. Terry, 491 F.

App'x 81, 83 (11th Cir. 2012).   However, Defendants have not persuaded the Court that the exhaustion requirement in 42 U.S.C. §1997e(a) bars all supplemental claims pertaining to events occurring after an action is filed.[4] See e.g., Boone v. Nose, Appeal No. 13–1935, 2013 WL 3481808, at *1 n.1 (3rd Cir. July 11, 2013) ("prisoners may file supplemental complaints if the claims in question . . . have truly accrued since the beginning of the suit and . . . are exhausted per 42 U.S.C. § 1997e(a) before the supplement is filed."); Smith v. Olsen, 455 F. App'x 513, 515–16 (5th Cir. 2011) (permitting inmate to proceed on § 1983 claims exhausted after he initiated suit, but before he raised them in an amended complaint); Romano v. Secretary, DOC, No. 2:06–cv–375, 2011 WL 1790125, at *4 (M.D. Fla. May 10, 2011) ("the   . . . PLRA only required [p]laintiff to fully and properly exhaust the new claims prior to the time he filed the amended complaint that included the new claims").[5]

Thus, leave to amend will not be denied for lack of exhaustion.   Defendants may raise these issues by motion.   See Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166

4 Plaintiff specifically cited Fed. R. Civ. P. 15(d) in the title of his Motion to Amend (Doc. 66).   Rule 15(d) permits "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added).

5 See also, Robbins v. Payne, No. 11–15140, 2012 WL 4812495, at * 3-4 (E.D. Mich. Oct 10, 2012) ("case law from this district and elsewhere supports the conclusion that 1997e(a) does not bar supplemental claims pertaining to events occurring after the action was filed"); Brown v. Warden Ross Corr. Inst., No. 2:10–cv–822 , 2012 WL 3527274, at * 12 (S.D. Ohio, Aug. 15, 2012 ) ("Several courts . . . [have concluded] "that fully and properly exhausted claims presented for the first time in an amended or supplemental complaint do not run afoul of § 1997e(a)."); Lee v. Birkett, No. 09–10723, 2009 WL 3465210, at *2 (E.D. Mich. Oct. 23, 2009) (finding that an inmate may supplement his complaint "to add new claims, based on events occurring subsequent to the filing of the original complaint, which appear fully exhausted at the time first asserted in the proposed complaint").   But see, Hempstead v. Halley, No. 4:07–cv–513, 2011 WL 4374958 at * 5 (N.D. Fla. Aug. 29, 2011) ("claims stemming from events [occurring after the complaint was filed] are due to be dismissed without prejudice for failure to exhaust administrative remedies"),

L.Ed.2d 798 (2007).   The Court will allow Plaintiff to go forward with his religious infringement claims against Defendants Fowlkes, Bishop, Gore, Adair, M. Smith, Caldwell, and Washington.   To this extent, Plaintiff's Third Motion to Amend (Doc. 66) is **GRANTED**.

**7.) Eighth Amendment claims for deliberate indifference to Plaintiff's safety**

Plaintiff objects to the Magistrate Judge's recommendation that his deliberate indifference claims against Defendants Bishop, Carter, and Means be dismissed. Plaintiff originally alleged that these defendants told other inmates he was as an "informant" and that this resulted in his receiving "death threats."   Amend. Comp. at ¶¶ 169-174.   In the O&R, the Magistrate Judge found that Plaintiff failed to make sufficient allegations of injury and that "the act of telling other inmates that Plaintiff is an informant, *without more*, does not rise to the level of a constitutional violation," O&R at 24-25 (emphasis added). See Sepulveda v. Burnside, 170 F. App'x 119, 124 (11th Cir. 2006) (allegation that officer referred to prisoner as a "snitch" in the presence of other inmates did not rise to the level of a constitutional violation).

Plaintiff's Objection, however, provides additional allegations about the rumors spread by Defendants and the resulting risk of harm. See Objection at 12-13.   For example, Plaintiff now alleges that gang members were "passing the word" to kill him after learning he was an informant, and he identifies a specific "gangsta disciple" within Hi-Max who was given this information.   See id.

These new allegations will be considered as a motion to amend, and with these additional facts, Plaintiff has now sufficiently alleged that Defendants may have endangered his life by exposing him to the possibility of inmate retaliation and stated an Eighth Amendment claim.[6] "Numerous courts – including the Eleventh Circuit – have recognized that inciting other inmates to harm a prisoner, such as by labeling the prisoner a 'snitch' or informant, has the potential for great harm and may constitute a violation of the Eighth Amendment." Jones v. St. Lawrence, No. CV408-095, 2008 WL 5142396, at *5 (S.D. Ga. Dec. 5, 2008); see e.g., Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam) (allegation that officer endangered prisoner's life by telling inmates he was a snitch, thereby exposing him to the possibility of inmate retaliation, is sufficient to survive preliminary review).

Thus, while the Court finds no error in the Magistrate Judge's Recommendation, the Court will, because of the new allegations made in the Objection, allow these Eighth Amendment claims against Bishop, Carter, and Means to go forward.

---

6 Plaintiff has still not pled a physical injury with respect to this claim.  However, courts "have recognized that the Eighth Amendment reaches official conduct 'that is sure or very likely to cause' serious injury at the hands of other inmates, . . . even when such injury has yet to occur at the time prisoner files his complaint." Jones, 2008 WL 5142396, at *5 (citing Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001) (quoting Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1992)). See also, Boxer X v. Harris, 459 F.3d 1114, 1118 (11th Cir. 2006) (quoting Marsh v. Butler County, 268 F.3d 1014, 1034 (11th Cir. 2001) ("case law. . . of the Supreme Court . . . made it plain that lack of physical injury did not mean that no Eighth Amendment violation had been established").  Although Plaintiff's failure to demonstrate a physical injury can preclude him from recovering compensatory damages, he may still be entitled to nominal damages or injunctive relief.  See id; Slicker v. Jackson, 215 F.3d 1225, 1231-32 (11th Cir. 2000) ("a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he suffered no compensable injury"); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (holding that 42 U.S.C. § 1997e(e) does not affect the availability of declaratory or injunctive relief).

8.) **Due process claims based on the "behavioral modification program"**

Plaintiff's Objection also complains that "*the Magistrate Judge missed* [his] *intent to litigate being compelled into an involuntary behavior modification program*." <u>See</u> Objection at 14-17. The Court disagrees: These allegations against Defendants Bishop and Humphrey were not overlooked in the O&R. They were considered as part of Plaintiff's conditions of confinement claims – which, as discussed above, were permitted to go forward. <u>See</u> O&R at 6-7. The Magistrate Judge also briefly considered this as a due process claim and found that Plaintiff did not provide sufficient allegations about Bishop's involvement "in the implementation of more restrictive procedures in the Hi-Max unit" so as to demonstrate a violation of due process. <u>Id.</u> at 14-15. Plaintiff's due process claims against Defendant Humphrey were permitted to go forward.

Plaintiff's Objection and Second Motion to Amend seek to now to either re-assert or clarify his intent to state a claim against Defendants Humphrey and Bishop for "initiating an involuntary behavioral modification program" in violation of his procedural due process rights. <u>See</u> Objection at p. 14. This Court has considered both the Objection and the proposed amendments related to this claim and agrees that Plaintiff's allegations do not support a due process claim against Defendant Bishop.

From what the Court can glean from the Complaint and Objection, the challenged "behavior modification program" consists of multiple behavior classification levels intended to reward inmates for good behavior and impose harsher restrictions on those

who commit disciplinary infractions.   See Amend. Compl. at ¶ 139.   According to the Complaint, the levels are divided by cell-assignment, with B-wing, C-wing, D-wing, E-wing, and F-wing of Hi-Max each having different levels of restriction.   Id.   Even if this is true and the new program has been applied without any due process protections, Plaintiff's allegations do not demonstrate that either this program or Defendants' conduct violated his constitutional rights.

Plaintiff only alleges that Defendants *initiated* this program (and presumably replaced or supplemented the prior classification scheme).   Plaintiff does not specifically allege which, if any, of these levels he was initially assigned, how that determination was made, or whether either named defendant was involved in this decision.   Although the Complaint does briefly state that Plaintiff went to a "modification program hearing" on March 25, 2013, where he was told that he would "be placed back in phase four for receiving a disciplinary," see id. at ¶ 165, Plaintiff does not provide any information about the "hearing," the alleged "disciplinary," or the official who made this placement decision.

As noted above, the due process claims based on Humphrey's role in Plaintiff's classification and placement are going forward.   To the extent that the new claim should be construed simply as an extension of Plaintiff's other due process claims, his claim against Defendant Bishop fails because Plaintiff did not allege how Bishop was involved in placing or keeping him confined in punitive segregation or in determining

his classification.

The Court thus agrees that Plaintiff did not make sufficient allegations to state a due process claim against Defendant Bishop.   Plaintiff's proposed amendments related Defendant Bishop would thus be futile.   The Court also finds that Plaintiff's proposed amendments related to Defendant Humphrey are duplicative of those allegations in the Complaint. See Complaint (Doc. 33) at ¶¶ 136-140; Proposed Amendment (Doc. 45-1). Therefore, with respect to these claims, the First Motion to Amend (Doc. 45) is **DENIED**.

### 9.) Supplement to Eighth Amendment claims for inadequate medical care

Plaintiff's Third Motion to Amend also seeks to supplement his Eighth Amendment claims against Defendants Burnside and Gore.   See Proposed Amend. Compl. at ¶¶ 92-100, 145.   These amendments are based on recent events and will be allowed under Fed. R. Civil 15(d).   To this extent, Plaintiff's Third Motion to Amend (Doc. 66) is **GRANTED**.   See Fed. R. Civ. P. 15(d).

However, Plaintiff will not be permitted to use other supplemental allegations to add new Eighth Amendment claims against Defendants Adair, Fowlkes, Dawn Smith or Mozell Smith. See Proposed Amend. Compl. at ¶¶ 123-127.   The Proposed Amended Complaint alleges that Adair recently "brought a memo to [Plaintiff's] cell" which was dated April 17, 2008.   Id. at ¶ 123.   The memo was from Defendants D. Smith, Fowlkes, and M. Smith and instructed "all medical staff not to utilize any front cuff or waist chain profiles [because] it is a security issue."   Id.

These allegations are not sufficient to state an Eighth Amendment claim.   Adair's mere delivery of the memo did not violate Plaintiff's constitutional rights, and Plaintiff's allegations fail to show how the creation of the memo was unconstitutional.   Plaintiff does not allege any facts in the Proposed Amended Complaint to show that Defendants acted maliciously or in retaliation when the memo was issued.   Moreover, as discussed above, this memo was allegedly issued long before Plaintiff was denied renewal of his waist-chain profile on November 24, 2008.   See Amend Compl. at ¶28.   The memo also states that it was intended to address "security" concerns and is not linked specifically to Plaintiff.   See e.g., Lerma v. Bell, 2 F. App'x. 782 (9th Cir. 2001) (confiscation of knee brace for legitimate security concerns did not state § 1983 claim).

Therefore, Plaintiff's Third Motion to Amend (Doc. 66) is **DENIED** to the extent he intended to add new Eighth Amendment claims against Defendants Adair, Fowlkes, Dawn Smith or Mozell Smith.

### 10.  Request for service of summons by U.S. Marshals

Finally, Plaintiff complains that the Magistrate Judge improperly required him to effect service of summons.   The Court construes this complaint to be motion for reconsideration.   Plaintiff has also filed a Motion to Compel and Motion for Service requesting that the Court now order the U.S. Marshals to effect service in this case.

After review, the Court finds no error in the Magistrate Judge's initial order requiring Plaintiff to effect service.   The relevant statute, 28 U.S.C. § 1915(d), only

requires the officers of the court to "issue and serve all process" if a plaintiff has been allowed to proceed *in forma pauperis*.   Plaintiff is not proceeding *in forma pauperis* in this case.   He pre-paid the full $350.00 filing fee; and Plaintiff concedes that he has "three strikes" for the purposes of 28 U.S.C. §1915(g) and could not proceed *in forma pauperis*. See Objection at 16.   Therefore, because he has not been granted leave to proceed *in forma pauperis*, Plaintiff is not entitled to ordered service under § 1915(d).

Of course, even when a plaintiff pre-pays the entire filing fee, the district court has the discretion to order the U.S. Marshals to effect service.   See Grant v. Romero, No. CV 112–107, 2013 WL 1743881 at * 1 (S.D. Ga. April 23, 2013).   But, before directing the Marshals to effect service, the Court "should determine whether [the] plaintiff has exhausted other reasonable means of effecting service privately . . . ." Id.

In this case, Plaintiff contends that he attempted to serve Defendants by mailing counsel for Defendants, Deborah Gore, a "notice of lawsuit and request for waiver of service of summons" pursuant to Fed. R. Civ. P. 4(d).   Ms. Gore then responded she was not authorized to receive service of summons and complaint in this action.   See Letter, dated July 26, 2013 (Doc. 43-1).   Defendants contend that Plaintiff should be required to serve them personally or by mailing a notice of suit and request for waiver of service directly to each defendant.   See Deft's Response to Pl's Motion to Compel (Doc. 56) at 3.

The Court is not going impose this burden on Plaintiff.   Plaintiff did, in good faith, make a reasonable effort to serve defendants through counsel.   The Court also

notes that it is difficult for an incarcerated person, especially one housed in segregation, to locate parties outside of the prison, and some of the defendants in this case may have since left the Department of Corrections.   Because Plaintiff is a state prisoner, there are also inherent security risks associated with providing him the current addresses of prison employees.   Due to this, and in the interest of judicial efficiency, Plaintiff's Motion for Service (Doc. 56) will be **GRANTED**; and the Motion to Compel (Doc. 46) is deemed **MOOT**.

It is accordingly **ORDERED** that service be made on the defendants who have not yet filed a waiver of service of summons.[7]   It is further requested that the Attorney General provide the last know addresses for the defendants.   Defendants shall file an Answer, or such other response as may be appropriate.   Defendants are also reminded their duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service.   See Fed. R. Civ. P. 4(d).

## CONCLUSION

Therefore, after careful consideration, the Court agrees with the findings and conclusions the United States Magistrate Judge.   However, in light of the additional allegations contained in Plaintiff's objections and amendments, he will now be permitted to go forward with claims against Defendants **Bishop, Carter, Means, Fowlkes, Gore, Burnside, Adair, Caldwell, Washington,** and **M. Smith**, as described herein.

---

7 Since the filing of Plaintiff's Motion to Compel, nine of the original defendants have filed a waiver of service. The others have not filed a waver and have not yet been served.

The Recommendation is otherwise **ADOPTED** and **MADE THE ORDER OF THE COURT**.   For the reasons discussed herein, Plaintiff's First and Second Motions to Amend (Doc. 45 & 63) are **DENIED**.   His Third Motion to Amend (Doc. 66) is **GRANTED in part** and **DENIED in part**.   Plaintiff's Motion for Service (Doc. 59) is **GRANTED**, and his Motion to Compel (Doc. 46) is deemed **MOOT**.

**SO ORDERED**, this 9th day of October, 2013.

S/   C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

jlr