## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| DEXTER SHAW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 5:12-CV-135-CAR-MSH |
| v. | : | 42 U.S.C. § 1983 |
| | : | |
| HILTON HALL, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Dexter Shaw, an inmate currently incarcerated at Georgia State Prison in Riedsville, Georgia, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] Currently pending before the Court are Defendants' Motions to Dismiss (ECF Nos. 68 & 118) and various motions filed by Plaintiff including additional motions to amend and motions for temporary restraining orders/preliminary injunctions.   For the reasons explained below, it is RECOMMENDED that Defendants' Motions to Dismiss (ECF Nos. 68, 118) be **GRANTED IN PART** and **DENIED IN PART** as detailed herein. Furthermore, the merits of Plaintiff's miscellaneous pending motions are discussed below.

---

[1]     Plaintiff's complaint (ECF No. 1) was superseded by his Recast Complaint (ECF No. 33) which was filed in response to the Court's Order of April 29, 2013 (ECF No. 25).  Subsequent to filing his Recast Complaint, Plaintiff filed additional amendments in the form of an Objection (ECF No. 44) and a Motion to Amend (ECF No. 66).  By Order dated October 9, 2013 (ECF No. 77), the Court allowed certain claims included in those amendments to proceed.  Thus, when the undersigned refers to the "Complaint" in this case, he is referring to those claims and allegations which have been allowed to proceed from documents 33, 44, and 66 as detailed in the Court's October 9, 2013 Order (ECF No. 77).

## BACKGROUND

The present action arises out of Plaintiff Dexter Shaw's confinement in both Georgia State Prison ("GSP") and the Special Management Unit ("SMU") at the Georgia Diagnostic and Classification Prison ("GD&CP").   Plaintiff's Complaint alleges numerous violations of constitutional rights by prison staff, including the First Amendment rights of access to the courts, freedom of speech, exercise of religion, the Eighth Amendment right to be free from cruel and unusual punishment, and the Fourteenth Amendment right to procedural due process.  Plaintiff further contends the Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).  Plaintiff seeks extensive declaratory and injunctive relief as well as awards of compensatory and punitive damages against all Defendants.

## DISCUSSION

## I.    Plaintiff's Motions to Amend (ECF Nos. 91, 117, 128, 132, 138, 152, 156)

Initially, the Court GRANTS Plaintiff's motion to voluntarily dismiss (ECF No. 132) two of his motions to amend (ECF Nos. 117 & 128).  Therefore, Plaintiff currently has pending four motions to amend his complaint.  (ECF Nos. 91, 138, 152, 156.)  The first two of these motions were filed when Plaintiff's action was still consolidated with actions by other inmates at the SMU, but due to a clerical error were not re-docketed in this case when Plaintiff's claims were severed.  Those motions were filed before this Court ordered Plaintiff to entirely recast his complaint with the caveat that such recast complaint would entirely supersede any previously filed complaint or amendment.  (*See* Order, April 29, 2013, ECF No. 25.)  Therefore, since Plaintiff filed his Recast Complaint

(ECF No. 33), aware that it would supersede all previous amendments, his prior-filed motions should be **DISMISSED AS MOOT**.

Thus, Plaintiff has two pending motions to amend his complaint (ECF Nos. 91, 138) remaining.  In each of those motions, Plaintiff attempts to add new claims to this lawsuit.  He argues that these amendments are necessary to the proper resolution of the issues in his complaint and that the Court should grant the amendments under Rule 15(a) of the Federal Rules of Civil Procedure.  Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Plaintiff has been given the opportunity to amend his complaint on numerous occasions.  Before his Recast Complaint was filed, the Court warned Plaintiff that it would replace and be substituted for all prior complaints and amendments.  (*See* Order 8, April 29, 2013, ECF No. 25.)  After the undersigned conducted a frivolity review (*see* Order & Recommendation, July 17, 2013, ECF No. 40) of that Recast Complaint and recommended that some of Plaintiff's claims proceed and others be dismissed, the district judge adopted the recommendation and allowed another amendment by Plaintiff (Order, Oct. 9, 2013, ECF No. 77).  Since that Order, Plaintiff has filed multiple additional motions to amend, while Defendants have filed their second Motion to Dismiss (ECF No. 118).

At this point in the case, the undersigned finds that leave to amend should not again be granted to Plaintiff.  Plaintiff's actions clearly meet the definition of a "repeated failure to cure deficiencies by amendments previously allowed," and given the pending motions to dismiss filed by Defendants, and the subsequent repeated amendments from Plaintiff, the Court also finds that "allowing amendment would cause undue prejudice to the opposing party."  *Bryant*, 252 F.3d at 1163.  Therefore, Plaintiff's remaining motions to amend (ECF Nos. 91, 138) should be **DENIED**.  If Plaintiff wishes to bring the new claims asserted in those amendments, he must do so in a separate lawsuit.[2]

## II.   Motions for Temporary Restraining Orders / Preliminary Injunctions (ECF Nos. 126, 144, 153)

Plaintiff also has pending three motions for temporary restraining orders or preliminary injunctions against multiple Defendants to enjoin various activities which were occurring at GD&CP.  Based on Plaintiff's filing of a Notice of Change of Address (ECF No. 149), it is clear that Plaintiff is no longer incarcerated at GD&CP.  "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."  *McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984); s*ee also Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome . . . If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant

---

[2]   Should Plaintiff elect to bring additional actions, he will be required to pay the full filling fee because he has previously incurred three or more strikes under the three strikes provision of the PLRA. 42 U.S.C. § 1915(g).

meaningful relief, then the case is moot and must be dismissed." (internal quotation marks and citation omitted).  Because the Court can no longer give the Plaintiff the relief he seeks, "dismissal [of these claims] is required because mootness is jurisdictional."  *Al Najjar*, 273 F.3d at 1336.  Since Plaintiff was recently transferred from GD&CP to Georgia State Prison, any requests for injunctive or declaratory relief against Defendants at GD&CP are moot, and it is RECOMMENDED that Plaintiff's motions be **DENIED**.

## III.   Motions to Dismiss (ECF Nos. 68, 118)

Defendants filed two motions to dismiss Plaintiff's Complaint.  The first (ECF No. 68) (hereinafter "First Motion to Dismiss")[3] was filed on September 17, 2013, before the district judge ruled on Plaintiff's earlier motions to amend and allowed the addition of new claims and parties.  The second (ECF No. 118) (hereinafter "Second Motion to Dismiss")[4] was filed on December 19, 2013, and incorporates by reference the arguments raised in the First Motion to Dismiss to the extent that they apply to the remaining claims after the Court's Order of October 9, 2013 (ECF No. 77).  Because the Second Motion to Dismiss covers all of the issues raised in the First Motion to Dismiss and incorporates the arguments therein, the undersigned recommends that the First Motion to Dismiss (ECF No. 68) be **DISMISSED AS MOOT**, and the Court will consider all of the arguments raised in both as though initially raised in the Second Motion to Dismiss.

---

[3]      The First Motion to Dismiss was filed by the following Defendants:  Carl Humphrey, Hilton Hall, Steve Upton, Mary Gore, Dawn Smith, Dr. Steven Finderson, Dr. Edward Hale Burnside, Gary Caldwell, and Victoria Malone.

[4]      The Second Motion to Dismiss was filed after the Court allowed new claims and new parties to be added to the case.  That motion was filed by the following Defendants:  June Bishop, Burt Means, Joseph Fowlkes, Lynda Adair, Mozell Smith, Carl Humphrey, Hilton Hall, Steve Upton, Mary Gore, Dawn Smith, Dr. Steven Finderson, Dr. Edward Hale Burnside, Dr. Sharon Lewis, Gary Caldwell, Margaret Washington, Jacinta Johnson, and Victoria Malone.

The undersigned's July 17, 2013 Order and Recommendation (ECF No. 40), and the district judge's October 9, 2013 Order (ECF No. 77) set out the claims that have been allowed to proceed to this stage of the case.   Defendants have moved to dismiss Plaintiff's various claims for failure to exhaust administrative remedies, failure to state a claim, and qualified immunity.   The undersigned will now review the merits of Defendants' motion by discussing each type of claim brought by Plaintiff individually and Defendants' arguments for dismissal of each.

A.  First Amendment Access to Courts

Plaintiff's first set of claims encompasses allegations that Defendants Humphrey and Bishop violated his First Amendment right to access the courts by interfering with his legal mail and causing him to lose an opportunity to pursue an appeal.  (Pl.'s Recast Compl. at ¶¶ 126-29, 145-46, 181, 188.)  The allegations against Defendants relate only to actions occurring on or after August 7, 2012.  (*Id.*)  Defendants argue that Plaintiff's claim should be dismissed because he failed to exhaust his administrative remedies on this claim as required by the Prisoner Litigation Reform Act ("PLRA") before filing his initial complaint on April 13, 2012.  (Def.'s Mem. in Supp. of Second Mot. to Dismiss 8-11, ECF No. 118-1.)

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison

conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).  The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]").  Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings.  *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.*  If, taking the plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed.  *Id.*  "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*  The defendant bears the burden of proof during this second step.  *Id.*

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules[.]" *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). Defendants have established that GD&CP uses the Georgia Department of Corrections' Standard Operating Procedures (SOP) regarding grievances.  (Caldwell Aff. ¶¶ 3-6, Sept.

17, 2013, ECF No. 68-2.)  The SOP mandates that an inmate must follow a three-step process in order to exhaust his remedies: file an informal grievance, file a formal grievance, and file an appeal.  (*Id.* ¶¶ 11-15, Attach. A at 5-9.)[5]

To determine if Plaintiff has properly exhausted his claims, the Court first looks to the allegations in the Defendants motion to see if they conflict with Plaintiff's version of the facts.  Defendants simply argue that Plaintiff did not and could not fully grieve the allegations before filing his lawsuit because the incident allegedly occurred after the suit was filed.  (Def.'s Mem. in Supp. of Second Mot. to Dismiss 8-11.)  Plaintiff, alternatively, argues that he filed a number of grievances related to the theft of or interference with his legal mail before his suit was filed on April 13, 2012, and that these grievances are sufficient to get him past the exhaustion requirement, even though the specific allegations of mail theft at issue here occurred after that time.  (Pl.'s Br. in Supp. of Resp. to Def.'s First Mot. to Dismiss 4-5, ECF No. 103-6.)

It is undisputed that Plaintiff did not grieve the specific incident at issue here before April 13, 2012.  However, Defendants admit that it appears Plaintiff did complete the grievance process for that incident before he filed his Recast Complaint.  (Def.'s Br. in Supp. of Second Mot. to Dismiss 9, ECF No. 118-1.)[6]  Therefore, to be entitled to

---

[5]     GDOC revised its grievance SOP effective December 12, 2012.  This change did not take effect until after the relevant time for Plaintiff to exhaust his remedies, so this fact does not change the analysis for these purposes.

[6]     Defendants argued in their Reply (ECF No. 104) to Plaintiff's Response to their First Motion to Dismiss that even if the Court disagreed with their argument that exhaustion must occur before the initial complaint is filed, Plaintiff did not fully grieve the mail theft issue before filing his Recast Complaint.  (*Id.* at 7.)  However, in their Second Motion to Dismiss, they admit that "Plaintiff appears to have exhausted the claim in late February 2013."  (Def.'s Second Mot. to Dismiss 9.)

dismissal for failure to exhaust under these facts, Defendants must persuade the Court that the PLRA requires exhaustion of administrative remedies before the filing of the initial lawsuit.

Defendants point to *Smith v. Terry*, 491 F. App'x 81 (11th Cir. 2012), a case out of the Middle District of Georgia, wherein the Eleventh Circuit affirmed the dismissal of a prisoner's § 1983 claim for failure to exhaust his administrative remedies under § 1997e(a). The court there reaffirmed that it interprets "the term 'brought'—as used in section 1997e(a)—to mean 'the filing or commencement of a lawsuit, not . . . its continuation.'" *Id*. at 83 (citing *Harris v. Garner,* 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*)). Therefore, the court found, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Id*. Furthermore, the court held that "although Rule 15(d) permits parties to supplement a pleading even when the original pleading is defective, Rule 15 does not and cannot override a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)" like § 1997e(a). *Id*. Therefore, only the facts "that existed when [Plaintiff] filed his original complaint" are pertinent to the determination of exhaustion. The Court finds that any actions taken by Plaintiff to exhaust the claim after April 13, 2012 cannot support his claim of exhaustion.

However, taking as true Plaintiff's statement that he filed other mail theft-related grievances before April 13, 2012, the question becomes whether Defendants are entitled to dismissal at this stage. Plaintiff points to precedent from the Eleventh Circuit and elsewhere in which the PLRA requirement was deemed satisfied by prior-filed grievances

in certain situations.  Therefore, although the Court finds that the initial filing date is the proper cutoff for exhaustion, Plaintiff's statements create an issue of fact as to whether Plaintiff's prior-filed grievances satisfy § 1997e(a) under that case law.  The Court cannot determine as a matter of law that Defendants are entitled to dismissal at step one and must move on to the second step of the exhaustion analysis to determine if the grievances referenced by Plaintiff satisfy the exhaustion requirement as Plaintiff contends.

In his response to Defendants' First Motion to Dismiss, Plaintiff argues that he filed other grievances about interference with his mail on various occasions prior to April 2012 which should be sufficient to satisfy the exhaustion requirement.  (Pl.'s Br. in Supp. of Resp. to Def.'s First Mot. to Dismiss 4-5.)  Plaintiff argues that his situation is analogous to *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215 (11th Cir. 2010), in which the Eleventh Circuit allowed a claimant to proceed on a § 1983 action over an exhaustion defense based on earlier-filed grievances.

In *Parzyck*, the plaintiff's requests for an orthopedic consultation were denied on multiple occasions and he eventually sued under § 1983 claiming deliberate indifference to his medical needs.  After the district court dismissed for failure to exhaust, the Eleventh Circuit reversed, finding that the grievances plaintiff filed regarding earlier denials of his requests were sufficient to put the prison officials on notice of the issue, and that the essential underlying claim of lack of orthopedic treatment did not have to be the subject of additional grievances each time a new request for an orthopedic consult for the same malady was denied by the same prison officials.  *Parzyck*, 627 F.3d at 1218-19.

The *Parzyck* court found that situation analogous to that of the plaintiffs in

10

*Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008), and *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). In each case, the plaintiff was openly homosexual and made it known to prison officials that his status exposed him to the risk of sexual assault in the unit in which he was confined. In *Howard*, the plaintiff was not required to initiate new grievances because the claims were exactly the same and new grievances would have been redundant. 534 F.3d at 1244. In *Johnson*, the plaintiff was repeatedly assaulted after the prison officials failed to assign him to protected housing. The Fifth Circuit found that he could not be expected to file a new grievance each and every time he was assaulted. *Johnson*, 385 F.3d at 521. However, in a footnote, the court expressly limited its holding, providing that new grievances would be required for any new events of a different character or which involved other actors, such as a claim of sexual harassment in a shower cell. *Id*. at 521 n.13.

Plaintiff argues that the repeated theft of his mail is a similar type of situation that doesn't require grieving each time. Plaintiff claims that he filed several grievances between June 2009 and January 2011 related to "holding legal mail, obstructing [] access to courts and theft of certified mail . . . mail being left in officer [sic] desk for about a month . . . [and] theft of mail." (Pl.'s Mem. in Supp. of Response to Def.'s First Mot. to Dismiss 4.) Plaintiff supports his contention with his own sworn declaration stating the same as his brief. (Pl.'s Sworn Decl. in Supp. of Response to Def.'s First Mot. to Dismiss ¶ 10, ECF No. 103-1.) Plaintiff does not, however, attach the cited grievances to his response and, therefore, the only evidence put forth by Plaintiff to support his claim is his statement that these alleged grievances covered these mail-related issues.

11

Defendants attached Plaintiff's grievance record to their Second Motion to Dismiss. (Def.'s Second Mot. to Dismiss, Attach. B to Ex. 1, ECF No. 118-4.) Plaintiff's cited grievances do appear in the grievance record, and the grievance category for each is listed as "mail/packages," and each grievance is listed as "appeal denied." (*Id.*) However, Defendants argue that Plaintiff's situation is distinguishable from the situations in *Parzyck*, *Howard*, and *Johnson* because the grievances there were exhausted close in time to the filing of the litigation and they were identical (or nearly so) to the issue sued upon. (Def.'s Reply to Pl.'s Resp. to Def.'s First Mot. to Dismiss 6, ECF No. 104.) Plaintiff's situation, on the other hand, involves individual instances of alleged mail theft, and the last fully exhausted grievance before April 2012 was exhausted nine months before this suit was filed.

At the second step of the exhaustion analysis, the Court must make determinations of fact regarding the exhaustion issue and Defendants bear the burden of proof. *Turner*, 541 F.3d at 1082. The Court has already determined that Plaintiff needed to exhaust his grievances before April 13, 2012 in order to proceed on these claims. Plaintiff contends that these other grievances satisfy the exhaustion requirement. The Court disagrees. The type of repeated and ongoing violations found in *Parzyck, Howard*, and *Johnson* is not present here. In both *Parzyck* and *Johnson*, the prior-filed grievances gave prison officials sufficient notice of the continual and ongoing nature of the injury suffered by the plaintiff. Plaintiff's prior-filed grievances cover separate and distinct instances of what he claims are actions taken by different persons at different times and places to interfere with his mail delivery in different ways, not a continuous or repeated violation of

12

Plaintiff's rights such as repeated assaults or denials of requests for medical care.

Furthermore, the latest grievance was filed well over a year before the actions alleged here even took place, far from the situations presented in those other cases where the closeness in time was important because prison officials were on notice of a continuing issue and had previously had time to respond. The same type of notice is not apparent when a full year has passed since an individual issue arose, and therefore it cannot be said that the prison officials were already on notice of the issue when the August 7, 2013 incident occurred such that they need not be given "time and opportunity to address complaints internally" before suit is filed against them. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The Court finds that Plaintiff's situation is distinguishable from those in *Parzyck, Howard*, and *Johnson* and Plaintiff's claims of interference with access to the courts do not meet the exception to the normal exhaustion requirement detailed in those cases. Therefore, the Court finds that Plaintiff has not exhausted his administrative remedies for the claims of violations of his first amendment right to access the courts and RECOMMENDS that these claims be **DISMISSED** without prejudice.

B. First Amendment Free Speech

The Court also allowed Plaintiff to move forward with claims against Defendants Humphrey, Bishop, and Johnson for violations of his free speech rights by allegedly stealing and destroying his personal mail, and using a personal letter written by Plaintiff in an effort to portray him as a "snitch" to other inmates. (Order, Oct. 9, 2013, Pl.'s Recast Compl. ¶¶ 158-62, 175-78, 181.) These claims regard letters which were

allegedly stolen around March or April 2013. (Pl.'s Mem. in Supp. of Response to Def.'s First Mot. to Dismiss 6.) Based on the Court's determinations above regarding the exhaustion requirement, Plaintiff's claims should be dismissed unless he properly exhausted the grievance procedure prior to April 13, 2012.

Plaintiff points to the same prior-filed grievances as above to cover the free speech claims as he did for the access to courts claims. (*Id.*) For the same reasons as above, these claims do not fall into the same category as the claims in *Parzyck, Howard,* and *Johnson*. The fact that Plaintiff asks the Court to consider the same grievances to cover a different set of claims as those above is further proof that the issues raised in those grievances were not identical, continuing, or repeated violations like the issues in *Parzyck, Howard,* and *Johnson*. Furthermore, these claims are very specific to the alleged theft of Plaintiff's letter in March or April 2013 and the use thereof to label Plaintiff a snitch. Such specific and individual claims must be grieved individually and are distinguishable from *Parzyck, Howard,* and *Johnson*. Accordingly, Plaintiff failed to exhaust his administrative remedies prior to filing this suit, and it is RECOMMENDED that his claims for violations of his right to free speech be **DISMISSED** without prejudice.

C. First Amendment Retaliation

Plaintiff was allowed to proceed on one claim of retaliation in violation of his first amendment right to free speech against Defendant Bishop. (Order & Recommendation, 18, July 17, 2013.) In that claim, Plaintiff contends that on March 18, 2013, Defendant Bishop ordered a retaliatory shakedown a few hours after Plaintiff responded

affirmatively to Defendant Bishop's query about his continuing to assist other inmates with legal complaints. (*See* Recast Compl. at ¶¶ 154-56.) Plaintiff also argues that Defendant Bishop had officers plant contraband in his cell during this shakedown as pretext for moving him to "punitive isolation" in retaliation for his assisting other inmates with legal issues. (*Id*. at ¶ 156.)

The undersigned allowed this claim to proceed beyond the initial review stage, but Defendant Bishop now moves to dismiss the claim for lack of exhaustion based on the same arguments as Plaintiff's other first amendment claims. (Def.'s Br. in Supp. of Second Mot. to Dismiss 13.) Again, the undersigned determined above that the PLRA requires a plaintiff to exhaust his administrative remedies before the initial filing of his § 1983 action, which in this case means Plaintiff must have exhausted the grievance procedure for this claim before April 13, 2012.

This claim, like the others above, arose after the April 13, 2012 filing. Plaintiff, however, does not argue that he filed any grievances prior to that date with regard to this claim. Therefore, for the reasons stated above, it is RECOMMENDED that Plaintiff's claim of retaliation against Defendant Bishop for the alleged retaliatory shakedown in March 2013 be **DISMISSED** without prejudice for failure to exhaust.

### D. Religious Freedom Claims

The district judge allowed Plaintiff to proceed beyond the initial review stage on claims first raised in his Motion to Amend (ECF No. 66) which was granted in part in the Court's October 9, 2013 Order (ECF No. 77). These claims, against Defendants Fowlkes, Bishop, Gore, Adair, M. Smith, Caldwell, and Washington, relate to the alleged

refusal by these Defendants to provide Plaintiff with his medication and adequate nutrition during non-daylight hours throughout the Muslim holy month of Ramadan. (Mot. to Amend at ¶¶ 101-20, 132-34, 142.)  These actions allegedly caused Plaintiff "pain," led to "unnecessary weight loss," and "deprived [him] of the qualitative experiences of the holy month of Ramadan." (*Id*. at ¶ 142.)

Defendants again argue that Plaintiff failed to exhaust his administrative remedies prior to filing this suit because the claims arose after the filing date of Plaintiff's initial complaint. (Def.'s Br. in Supp. of Second Mot. to Dismiss 14-15.)  Plaintiff did not file a response to the merits of Defendants' Second Motion to Dismiss.  Instead, Plaintiff filed two motions (the merits of which are considered later in this Order) which accuse Defendants and their attorneys of knowingly filing false affidavits in support of both motions to dismiss.  (ECF Nos. 122 & 123.)  Consequently, Plaintiff has not made the Court aware of any grievances which would satisfy the PLRA's requirements as to these claims.  Defendants have carried their burden as to exhaustion, and therefore, the undersigned RECOMMENDS that Plaintiff's claims under the First Amendment for violation of religious freedom, and claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) be **DISMISSED** for failure to exhaust.

E.  Eighth Amendment Deliberate Indifference to Medical Needs

Plaintiff further alleges that various Defendants have acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  A number of different claims are alleged against multiple Defendants, but can be grouped as follows:  (1) Defendants Gore and Forrest refused to see Plaintiff when he suffered an

16

injury to his eye and face (*Id.* at ¶¶ 89-90); (2) Defendants Hall, Lewis, Gore, D. Smith, Graves[7], Malone, Burnside, and Finderson refused to issue or re-issue Plaintiff a "waist chain profile," and refused to respond to Plaintiff's medical requests or issue a new profile (*Id.* at ¶¶27-33, 75, 77-81, 94); and (3) Defendants Graves, Malone, Burnside, Smith, Lewis, Forrest, and Gore refused to provide him with needed physical therapy for a shoulder injury, pain medication, or an orthopedic follow-up which were ordered by an outside orthopedist, and falsified or destroyed medical records and requests in order to cover these issues up (Pl.'s Recast Compl. at ¶¶ 21, 56, 61-65, 81-83, 86, 91-93, 96; Pl.'s Mot. to Amend at ¶¶ 92-100).

A deliberate indifference claim contains both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002).  Under the first component, a prisoner must set forth evidence of an "objectively serious medical" need that, if left unattended, poses a substantial risk of serious harm.  *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).  A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.  *Hill*, 40 F.3d at 1187.  "To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that

---

[7]     Defendant Judy Graves has not yet been served in this action and is not listed as a party to Defendants' Second Motion to Dismiss.  However, the Court finds that the arguments put forth by the Defendants named in the Second Motion to Dismiss apply equally to Defendant Graves, and are sufficient to allow the Court to make a determination regarding the claims against her.

risk; (3) by conduct that is more than mere negligence." *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003) (internal quotation marks and citations omitted).

### 1. Refusal to Attend to Plaintiff's Eye and Face Injuries

Plaintiff alleges that Defendants Gore and Forrest failed to adequately care for swelling to his face and eye caused by an alleged use of force against him.  (Pl.'s Recast Compl. at ¶¶ 89-90.)  Defendants argue that Plaintiff has not sufficiently alleged a cause of action for deliberate indifference to his serious medical needs.  (Def.'s Second Mot. to Dismiss 33-34.)

At this stage, the Court must accept as true all facts set forth in Plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Plaintiff's claims are insufficient to survive the 12(b)(6) standard. Plaintiff has failed to allege any measure of subjective knowledge on the part of Defendants Gore or Forrest that would warrant an inference that they knew both that failing to provide treatment at that particular time would result in a risk of serious harm or deliberately disregarded that risk. The Court RECOMMENDS that Plaintiff's claims regarding his facial injuries be **DISMISSED**.

### 2. *Failure to Issue/Re-issue "Waist Chain Profile"*

With regard to the "waist chain profile" that is the subject of most of Plaintiff's complaints, the undersigned finds that Defendants are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does

19

not apply.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).  In this case, it is undisputed that Defendants were acting within the scope of their discretionary authority each time they either refused to issue or re-issue Plaintiff a waist chain profile or refused to respond to Plaintiff's repeated requests for a new profile.  Because that determination is made, the burden shifts to Plaintiff to show that the Defendants are not entitled to qualified immunity.

"To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation."  *Anderson*, 501 F. App'x at 916 (citation omitted).[8]  Therefore, the Court must determine whether Plaintiff has sufficiently alleged that Defendants' conduct violated a constitutional right and whether that right was clearly established.

For the present purposes only, the Court will assume, without deciding, that Plaintiff has sufficiently alleged that Defendants' conduct in failing to issue or re-issue a waist chain profile violates his constitutional right to be free from cruel and unusual punishment.  However, Plaintiff has not shown the Court (because he failed to respond to the merits of the Second Motion to Dismiss), and the Court has not independently found, any authority to say that Plaintiff's right to be given a waist chain profile under his specific circumstances was a clearly established constitutional right.

"To be clearly established, a right must be sufficiently clear that every reasonable

---

[8] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first.  *McCullough*, 559 F.3d at 1205.

official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted). The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted). "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* (quotation marks and citation omitted) (emphasis and alteration in original). The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Plaintiff freely admits that in 2008, when he was under a waist chain profile and

was actually cuffed in front, he breached a security door and removed a key from that door.  (Pl.'s Recast Compl. at ¶ 23.)  It was sometime after this incident that prison personnel made the determination that it was a security risk to cuff inmates in front rather than behind, regardless of their medical situation.  (*See* Pl.'s Mot. to Amend at ¶¶ 123-24.)  It is well settled that the Court "must give a wide range of deference to prison officials acting to preserve discipline and security."  *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (internal quotation marks and citation omitted).  The United States Supreme Court has also limited the extent to which the Eighth Amendment applies to the actions by prison officials to prohibit restraints on inmates only if they "involve the unnecessary and wanton infliction of pain," are "grossly disproportionate[,]" or "are totally without penological justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotation marks and citations omitted).  Plaintiff has fully detailed the penological justification for his lack of waist chain profile: he has taken advantage of that profile in the past to cause what even he terms a "major security breach."  In light of the circumstances of this case, the determination not to grant Plaintiff a waist chain profile was not clearly established to be a violation of a constitutional right at the time.  Defendants are therefore entitled to qualified immunity with regard to Plaintiff's waist chain profile claims.  It is RECOMMENDED that these claims be **DISMISSED**.

3.   *Failure to Ensure Fulfillment of Orthopedist's Orders Including Denial of Pain Medication and Refusal to Provide Physical Therapy*

Plaintiff contends that Defendants Lewis, Burnside, Smith, Graves, Malone, Forrest, and Gore refused to provide him pain medication and falsified medical records to

support the withholding of medication for his injured shoulder.  Furthermore, Plaintiff alleges that these Defendants refused to provide him with needed physical therapy for a shoulder injury or an orthopedic follow up even though it was ordered by an outside orthopedist. (Pl.'s Recast Compl. at ¶¶ 21, 56, 61-65, 81-83, 86, 91-93, 96; Pl.'s Mot. to Amend at ¶¶ 92-100.)

Defendants argue that Plaintiff's allegations fail to support a claim that any Defendants were deliberately indifferent to a serious medical need in failing to follow the orders of Plaintiff's orthopedist or provide the prescribed pain medication.  (Def.'s First Mot. to Dismiss 21-25; Def.'s Second Mot. to Dismiss 30-33.)  Specifically, Defendants argue that Plaintiff failed to specify the injury or illness for which he sought pain medication on the particular occasions covered in the remaining claims, and failed to specify the extent or severity of the pain experienced.  (Def.'s First Mot. to Dismiss 21-22.)  Furthermore, Defendants argue that Plaintiff has not shown the requisite subjective knowledge on the parts of each Defendant to support a deliberate indifference claim.  (*Id.* at 22.)  Defendants also argue that each individual decision not to give Plaintiff his pain medication was a medical judgment call, and decisions not to provide him with the prescribed physical therapy "for more than eight months" were a difference of medical opinion from that of the orthopedist, neither of which rises to the level of a constitutional violation.  (*Id.* at 22-23.)  Alternatively, Defendants assert that they are entitled to qualified immunity.  (*Id.* at 32-33.)

The first stage of a deliberate indifference inquiry is to determine whether the Plaintiff has shown a severe medical need.  All of Plaintiff's claims regarding denial of

pain medication and physical therapy stem from a shoulder injury Plaintiff claims to have received sometime prior to January 1, 2005.  (*See* Pl.'s Recast Compl. at ¶ 18.)  He alleges that he has been diagnosed with "AC hypertrophy . . . moderate impingement, supraspinatus tendinopathy with a small incomplete tear, muscle hypertrophy, chronic tendonitis and degenerative joint disease" in his right shoulder."  (Pl.'s Mot. to Amend. at ¶ 93.)  Plaintiff repeatedly alleges that due to the lack of pain medication and physical therapy, he has suffered "unnecessary pains," and that Defendants actions have caused "physical, mental and psychological injuries."  (Pl.'s Recast Compl. at ¶¶ 35, 57, 168.)  More specifically, he alleges that the delay and interference with the orthopedist's orders have caused "stiffening/freezing up" of his injured shoulder and "limiting [his] use/movement of it."  (Pl.'s Mot. to Amend. at ¶ 92.)

Plaintiff alleges that he was seen by an orthopedist at Augusta State Medical Prison ("ASMP") in January 2010 who prescribed pain medication, and ordered that he do physical therapy and return for a follow-up visit thereafter.  (Pl.'s Recast Compl. at ¶ 63-64.)  Plaintiff's allegations of severe medical need all stem from the alleged failure of Defendants to follow these orders from the orthopedist.  As Defendants note in their brief, "a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citation omitted).  At the Rule 12(b)(6) stage of this litigation, the Court must accept Plaintiff's allegations as true.  These allegations are sufficient to establish that the injury to Plaintiff's shoulder constitutes a "severe medical

need" to satisfy the first prong of the deliberate indifference standard.

At the second prong of the deliberate indifference test, "the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence." *Cagle*, 334 F.3d at 987.   At this stage, Plaintiff must allege sufficient facts that, if proved, would support a finding in his favor as to all three of those points.   The undersigned finds that Plaintiff's allegations are insufficient to allege deliberate indifference claims against Defendants Graves, Smith, Malone, and Lewis.   Plaintiff does not allege sufficient specific facts (as opposed to conclusory allegations) to support the above requirements as to these Defendants.   There are simply no factual allegations regarding the subjective knowledge of these Defendants with regard to the pain medications that he alleges they withheld or the injuries for which those medications were prescribed.   Therefore, Plaintiff's Complaint does not state a claim under the Eighth Amendment, and it is RECOMMENDED that the deliberate indifference claims against Defendants Graves, Smith, Malone, and Lewis be **DISMISSED**.

As to Defendant Burnside, Plaintiff alleges that Defendant Burnside and others "continued to deny [him] the physical therapy prescribed by the orthopedic physician, for more than eight months." (Pl.'s Recast Compl. at ¶ 65.)  Even if the Court can infer that Defendant Burnside knew at that time about the alleged prescriptions, Plaintiff does not allege that Defendant Burnside was capable in any way of effectuating the treatment that Plaintiff sought.   Plaintiff merely makes the conclusory statement that Defendant Burnside and others "continued to deny" him the physical therapy, without even alleging

that Defendant Burnside was capable of making that happen.

Furthermore, Plaintiff alleges that after he was moved to ASMP for physical therapy on September 13, 2010 (*id.* at ¶ 73), and returned to GD&CP in November (*id.* at ¶ 77), his medical requests to see Defendant Burnside went unanswered (*id.* at ¶ 80). Plaintiff does not allege that Defendant Burnside himself is responsible for failing to schedule an appointment for Plaintiff. Furthermore, Plaintiff then says that Defendant Burnside did see him within two weeks of his return. This, at most, two week delay in seeing a patient for a five-year-old injury cannot rise to the level of a constitutional violation, especially on the meager allegations in Plaintiff's complaint and no allegations that this delay caused any damage that would have been prevented had Defendant Burnside seen Plaintiff earlier. Finally, as to Plaintiff's allegations that Defendant Burnside did nothing to fulfill Dr. Lewis' promise to ensure the orthopedist's orders were carried out, Plaintiff has not shown a constitutional violation. As stated above, Defendants are protected by qualified immunity with respect to Plaintiff's claims regarding the waist chain profile, and Plaintiff's allegations against Dr. Burnside fail to state a claim under Rule 12(b)(6). It is RECOMMENDED that Plaintiff's claims against Defendant Burnside be **DISMISSED**.

As to Defendant Gore, Plaintiff alleges that she conspired with other Defendants to falsify notations in his medical record that he "refused [his] orthopedic appointment." (Pl.'s Recast Compl. at ¶ 86.) Plaintiff further alleges that Defendant Gore falsified that he "refused [his] pain medication" in January 2011 in order to deny him his medication. (*Id.* at ¶ 91.) Defendant Gore later allegedly refused to give him his medication with the

excuse that his injuries were not covered under the "chronic clinic" and that he would need to see a doctor in order to get that prescription.  (*Id*. at ¶ 96.)

The Court finds that Plaintiff's allegations fail to allege sufficient facts to support a constitutional claim of deliberate indifference.  Plaintiff has not alleged any facts to support an inference that Defendant Gore had the requisite subjective knowledge of a risk of serious harm caused by these alleged actions.  In fact, Plaintiff's allegations show that Defendant Gore was not deliberately indifferent because she told him he was not authorized to receive that medication and he would need to be seen by a doctor before he could obtain it.  Plaintiff states no specific facts to support his contention that Defendant Gore engaged in a conspiracy to falsify his records, and his conclusory allegations are insufficient to state a claim against her.  Based upon the allegations in Plaintiff's Complaint, he has failed to state a claim against Defendant Gore.  The Court RECOMMENDS these claims be **DISMISSED**.

F.  Eighth Amendment Deliberate Indifference to Safety

The Court allowed Plaintiff's allegations of deliberate indifference to his safety to proceed against Defendants Bishop, Carter[9], and Means for actions involving the spreading of rumors that Plaintiff was an informant for prison officials, leading to threats against him.  (Order 20-21, Oct. 9, 2013, ECF No. 77; *See* Pl.'s Recast Compl. at ¶¶ 120-23, 163-64, 170-73; Pl.'s Obj. 12-13, ECF No. 44.)  Plaintiff alleges that: (1) Defendants

---

[9]    Defendant Starlite Carter has not yet been served in this action and is not listed as a party to Defendants' Second Motion to Dismiss.  However, the Court finds that the arguments made by the Defendants named in the Second Motion to Dismiss apply equally to Defendant Carter, and are sufficient to allow the Court to make a determination.

Bishop and Means entered an agreement around July 2012 to spread false information to other inmates participating in a hunger strike that Plaintiff was an informant (Pl.'s Recast Compl. at ¶ 120); (2) Defendant Bishop did so for the purpose of causing Plaintiff harm (*Id.* at ¶ 123); (3) Defendant Means spread other "false rumors" about Plaintiff causing the termination of Defendant Carter's employment at GSP (*Id.* at ¶¶ 169-70); (4) Defendant Carter perpetuated the rumors by confirming them to her brother, an inmate at GD&CP (*Id.* at ¶ 172); (5) Defendant Bishop introduced a letter at a deposition with other inmates that Plaintiff claims was intercepted from his outgoing mail in order to insinuate that Plaintiff was helping the prison administration against the inmates (Pl.'s Obj. 12-13); (6) these rumors were told to numerous inmates including gang members who thereafter made specific threats against Plaintiff's life (Pl.'s Recast Compl. at ¶ 173). The Court will consider the allegations against each Defendant individually.

As to Defendant Carter, a plain reading of Plaintiff's Complaint shows that a § 1983 claim cannot be sustained against her. Plaintiff's only allegations against Defendant Carter are that she confirmed to her brother that Plaintiff was the cause of her termination from employment at GSP. Even taking that as true, Defendant Carter's actions must necessarily have occurred after she was terminated from her employment, making her not an employee of the GDOC at the time. To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed <u>by a person acting under color of state law</u>. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995) (emphasis added). Any action

taken by Defendant Carter after she was dismissed from her employment with GDOC was not committed "by a person acting under color of state law." Therefore, it is RECOMMENDED that the claims against Defendant Carter be **DISMISSED**.

As to Defendants Bishop and Means, Plaintiff makes conclusory accusations that Defendant Means, per orders of Defendant Bishop, spread false rumors to other inmates about Plaintiff being an informant and having caused Defendant Carter to lose her job at GSP. (Pl.'s Recast Compl. at ¶¶ 169-70.) Means apparently responded to Plaintiff's accusations by alleging that the inmates heard the rumors from GSP officers during an inmate transfer. (*Id.* at ¶ 171.) Defendants Bishop and Means argue that Plaintiff's claims are barred by the exhaustion requirement because they arose, by Plaintiff's own allegations, in July 2012 and March 2013. As the undersigned determined above, the PLRA requires that Plaintiff have exhausted his claims before the date he filed his original complaint, April 13, 2012. As these claims arose after that date, Plaintiff cannot have completed the exhaustion requirement before that date. Further, unlike some of his other claims, Plaintiff has not pointed to other grievances which he fully exhausted prior to April 13, 2012 which might cover these claims. Therefore, it is RECOMMENDED Plaintiff's claims against Defendants Bishop and Means for deliberate indifference to safety be **DISMISSED**.

G. Eighth Amendment Conditions of Confinement

Plaintiff's next set of claims are based on his allegations that he has been held in "punitive" segregation for over twelve years, causing him to "physically and mentally deteriorate." (Pl.'s Recast Compl. at ¶¶ 42-51, 85, 139, 167, 185-87.) The undersigned

previously found that the conditions of confinement claimed by Plaintiff neither alone nor in combination evidence the sort of "extreme" deprivations as are required to state an Eighth Amendment claim.  (Order & Recommendation 8-10, Jul. 17, 2013, ECF No. 40.) However, given the length of the alleged punitive confinement, Plaintiff's claims against Defendants Hall, Upton, and Humphrey were allowed to proceed beyond the frivolity review stage.  Defendants now move to dismiss Plaintiff's conditions of confinement claim as failing to state a claim upon which relief can be granted under Rule 12(b)(6) contending that even when the length of Plaintiff's confinement in segregation is considered, he has not alleged conditions that would amount to a violation of the Eighth Amendment.  (Def.'s First Mot. to Dismiss 26-29; Def.'s Second Mot. to Dismiss 35-38.)

The United States Supreme Court has limited the reach of the Eighth Amendment to prohibit punishments which "involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations and quotation marks omitted).  To state an Eighth Amendment conditions of confinement claim, a prisoner must allege specific facts to show that his conditions were objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." *Id*. at 347.  These include "essential food, medical care, [and] sanitation."  *Id.* at 348.  This standard is met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004), or if society otherwise "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to

such a risk." *Helling v. McKinney*, 509 U.S. 25, 37 (1993).

When multiple conditions are alleged, the district court must consider "the totality of the confinement conditions" to determine if the conditions evidence a constitutional deficiency. *Wilson v. Blankenship*, 163 F.3d 1284, 1292 (11th Cir. 1998). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, this is found "only when [the conditions alleged] have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." *Id.*

Plaintiff cites the following as cruel and unusual conditions of confinement in the SMU: inadequate lighting; inadequate nutrition; denial of medical care; denial of physical exercise; inadequate medical staffing; and no standard infirmary. (Pl.'s Br. in Resp. to Def.'s First Mot. to Dismiss 30-35, ECF Nos. 103-6, 103-7.) Furthermore, he states that his continued assignment to the SMU for a period allegedly exceeding twelve years violates his Eighth Amendment rights. (*Id.* at 30.)

As the undersigned previously found, even when considered collectively, Plaintiff's conditions do not evidence "extreme" deprivations, as is required to state an Eighth Amendment claim. None of the facts alleged describe conditions which would be considered inhumane or deprive Plaintiff of "the minimal civilized measure of life's necessities." *See e.g.*, *Hamm v. DeKalb County*, 774 F.2d at 1575 (prisoners need only be provided "reasonably adequate food"); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (strip searches are not unconstitutional); *Overton v. Bazzetta*, 539 U.S. 126,

136–37 (2003) (withdrawal of visitation privileges "is not a dramatic departure from accepted standards for conditions of confinement"); *Milton v. Ray*, 301 F. App'x 130, 133 (3d Cir. 2008) (per curiam) (loss of commissary privileges for two months was not unconstitutional); *Georges v. Ricci*, Civ. No. 07–5576, 2007 WL 4292378, at *7 (D.N.J. Dec. 4, 2007) (visitation and telephone contacts with family members were not a minimal life's necessity).[10]

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987). "Although prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," and "[u]nder certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands." *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) (internal quotation marks and citation omitted).

The only remaining question is, taking as true Plaintiff's allegations that he has

---

[10]   The restrictions about which Plaintiff complains are in fact not a dramatic departure from the accepted standards for those confined in administrative segregation. *See e.g., Fricks v. Upton*, No. 5:10–CV–458 (MTT), 2011 WL 3156680 at * 3 (M.D. Ga. April 14, 2011) (allegations that plaintiff was only allowed to shower three times a week, was handcuffed every time he was moved within the prison, was denied library call and educational opportunities, and was forced to wear his hair "bald" were not "sufficiently serious" to constitute cruel and unusual punishment); *Garcia v. Cameron*, No. 2:10–cv–487–FtM–29DNF, 2010 WL 5477765 at *3 (M.D. Fla. Dec. 30, 2010) (allegations that prisoner was afforded only 30 minutes of outside physical exercise, three times a week, 15 minute showers three times a week, and 15 minute shaves and/or haircuts three times a week were not "the type of deprivation of life's necessities to rise to an Eighth Amendment violation").

32

been kept in administrative segregation in the SMU for twelve years or more by Defendants Hall, Upton, and Humphrey as punishment for his lawful activities while in prison, whether an Eighth Amendment violation is alleged.  The undersigned finds that at this stage of the litigation, Plaintiff's claim for twelve years of allegedly punitive segregation cannot be dismissed.  Like the plaintiff in *Sheley v. Dugger*, Plaintiff has alleged a significant period of time in administrative segregation, which has caused "mental and physical deterioration," and contends "that his confinement in [the SMU] is punitive in nature."  833 F.2d at 1429.  As the court stated in *Sheley*, "[i]f the segregation is punitive, it should be determined whether it shocks the conscience, is grossly disproportionate to the offense, or is totally without penological justification."  *Id.*  Although the undersigned has serious doubts about the likelihood of Plaintiff's ability to prove the allegations in his Complaint, the Court is not at liberty to make that determination at the 12(b)(6) stage.  It is therefore RECOMMENDED that Plaintiff's Eighth Amendment claim of cruel and unusual punishment be **allowed to proceed** against Defendants Hall, Upton, and Humphrey, and Defendants' motion in that regard is **DENIED**.  However these claims are limited to only the contention that Plaintiff has been held in punitive segregation for twelve years causing mental and physical deterioration.  It is further RECOMMENDED that Plaintiff's other claims under the Eighth Amendment regarding the conditions of his confinement be **DISMISSED**.

## IV.   Procedural Due Process

Plaintiff also alleges that Defendants Hall, Humphrey, Upton, Caldwell, and Malone violated his right to procedural due process by classifying him in various types of

33

"lock-down" without notice or opportunity to be heard, by failing to respond to classification appeals or provide reasons for his classification, and by failing to abide by proper procedures in investigating his classification.  (Pl.'s Br. in Resp. to Def.'s First Mot. to Dismiss 2.)  The Court allowed this claim to proceed because Plaintiff stated a plausible claim that a protected liberty interest was implicated because his assignment to the SMU could impose an "atypical hardship," entitling him to some measure of due process.  (*See* Order and Recommendation 13, July 17, 2013.)  The Court did not allow Plaintiff to expand his Complaint to include a claim against Defendant Bishop for the "involuntary behavioral modification program" which was allegedly initiated during Plaintiff's tenure in the SMU.  (*See* Order 23-24, October 9, 2013.)   Defendants, however, argue that Plaintiff's Complaint fails to allege sufficient facts for the Court to find that Plaintiff was deprived of any constitutionally-protected liberty interest, and should therefore be dismissed pursuant to Rule 12(b)(6).  (Def.'s First Mot. to Dismiss 29-32.)

In *Sandin v. Conner*, the United States Supreme Court found that

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 472, 483-84 (2005) (citations omitted).  Thus a liberty interest can arise from the Due Process Clause itself or can be created by the actions of the state.  The Supreme Court has found the Due Process Clause implicated "of its own force" in the involuntary

administration of psychotropic drugs to an inmate, *Washington v. Harper*, 494 U.S. 210 (1990), as well as in the involuntary transfer of an inmate to a mental hospital, *Vitek v. Jones*, 445 U.S. 480 (1980).  Furthermore, actions of the state, such as a statutory regime for granting credit time for good behavior, can also create a due process liberty interest. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

The Eleventh Circuit has held that administrative segregation does not implicate liberty interests in the way that the abovementioned involuntary procedures do because under certain circumstances administrative segregation is a necessary limitation of rights that incarceration demands.   *Al-Amin v. Donald*, 165 F. App'x 733, 738 (2006). However, the court in *Al-Amin* had the issue before it at the summary judgment stage, and had the benefit of discovery.   The facts of that case showed the conditions in administrative segregation were not substantially different from those in the general population.   *Id.* at 738-39.  Therefore, based on established precedent from the Supreme Court and other Eleventh Circuit law, the court found that a liberty interest arising from the Due Process Clause was not implicated by the plaintiff's extended confinement in segregation.   *Id.*

At the 12(b)(6) stage, the Court must take Plaintiff's allegations as true and draw all reasonable inferences in his favor.  If Plaintiff has sufficiently alleged facts to support an inference that shows his confinement "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," then the Court must allow his claim to proceed.   *Sandin,* 515 U.S. at 484.  Plaintiff has alleged that he has been held in some type of segregation for a period of more than twelve years.

Plaintiff further claims that his confinement in segregation is "punitive" in nature, and that he is not allowed to pursue educational classes that he claims are required for his parole eligibility. Because his classification to the SMU deprives him of these opportunities, he argues that he has a liberty interest in not being classified in segregation. (Pl.'s Br. in Resp. to Def.'s First Mot. to Dismiss 34-35.)

Even taking these allegations as true, Plaintiff has failed to show that he has a liberty interest protected by the Due Process Clause "of its own force." *See Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (finding that the Due Process Clause does not protect an inmate from changes in conditions of confinement "as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed upon him"); *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (finding that prisoners have no due process-protected liberty interest in "being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters"); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997) ("when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty").

Plaintiff does not allege that his confinement in the SMU has extended his term of incarceration other than to keep him from fulfilling requirements that make him parole eligible. However, Plaintiff has no liberty interest in parole eligibility. *Walker v. Fla. Parole Comm'n*, 299 F. App'x 900, 902 (11th Cir. 2008) ("The Constitution does not confer a liberty interest in parole"). Therefore, as Plaintiff has not sufficiently alleged

that his confinement in the SMU exceeds his sentence, he has not shown a liberty interest protected by the Due Process Clause "of its own force."

Therefore, in order for Plaintiff to state a claim to a liberty interest implicating due process rights, he must show that his conditions constitute an "atypical and significant hardship" compared to the "ordinary incidents of prison life" under the holding in *Sandin*. 515 U.S. at 484. Defendants argue that Plaintiff has not alleged sufficient facts for the Court to find that his conditions of confinement in the SMU are atypical of ordinary prison life, or that they work a significant hardship compared to ordinary prison life.

Based on Plaintiff's allegations and reasonable inferences deduced therefrom, the facts at hand on which the Court must base its determination are as follows: Plaintiff has been held in the SMU at GD&CP, which is a type of administrative segregation, for up to twelve years; he has been subjected to handcuffing behind his back, causing pain and further injury to an already-injured shoulder which has limited his ability to engage in physical exercise for months at a time; in 2008 Plaintiff breached a security door and removed a security key from that door, while handcuffed in front; his food portions are three courses rather than the standard five courses and two days a week bread is not served; Plaintiff has periodically refused to eat the food that his is given; there is no infirmary in the SMU so sick and injured inmates in the SMU are left in their cells without medical oversight, and this neglect led to the death of an inmate in July 2013; and Plaintiff's personal mail has been destroyed or improperly opened by staff.

These facts do not sufficiently show that his conditions of confinement are "atypical or significant hardships" compared to ordinary prison life because Plaintiff does

37

not describe how the conditions are different for a prisoner that is not housed in the SMU. Although Plaintiff frequently describes the conditions in the SMU as "atypical and significant hardships," he does not give any specifics regarding the conditions of confinement that other prisoners face outside of the SMU. The Court cannot infer what the conditions are for other prisoners simply from Plaintiff's statements detailing the conditions in the SMU. Plaintiff has made no showing, for example, that he would not be handcuffed behind his back if he were in general population, or that the food portions in general population were not decreased to three courses just as they allegedly were in the SMU. Furthermore, the allegation that the infirmary is too far from the SMU does not lead to a reasonable inference that there are no other inmates or sections of the prison that deal with a similar delay in medical attention.

Based on the allegations in his Complaint, Plaintiff has failed to sufficiently allege that the conditions of his confinement in the SMU are an "atypical or significant hardship" compared to the "ordinary incidents of prison life" and therefore has not shown that a liberty interest is implicated by his confinement in the SMU. Therefore, it is RECOMMENDED that Plaintiff's claims of procedural due process violations be **DISMISSED**.

## V.     **Plaintiff's motions related to Defendants Motions to Dismiss (ECF Nos. 122, 123, 125, 162)**

Plaintiff filed four motions related to the pending motions to dismiss and the actions of Defendants' counsel with respect to those motions. (ECF Nos. 122, 123, 125, & 162.) Plaintiff contends that Defendants and their counsel have filed knowingly false

statements in the affidavits filed in support of the two motions to dismiss.  As sanctions for this, Plaintiff asks in document 122 to be relieved of the duty to respond to the motions as ordered by the Court in Orders dated September 17, 2013 (ECF No. 73) and December 19, 2013 (ECF No. 119), and in document 123 for the Court to dismiss the motions to dismiss based on their allegedly fraudulent affidavits, or grant him extra time to respond to the motions.  As support for his contentions, Plaintiff included an affidavit (ECF No. 123-1) stating that certain parts of Ms. Medlock's affidavit (ECF No. 118-2) were false.

Plaintiff's allegations are simply unsupported.  Plaintiff offers no evidence to support his claims that any statements in the affidavits are untrue, let alone to support the grave accusation that the affiants and their counsel knowingly filed false statements with the Court.  Plaintiff's only support comes from his own self-serving statements.  These motions (ECF Nos. 122 & 123) are therefore **DENIED**.

Furthermore, Plaintiff asks the Court in document 162 to strike the two motions to dismiss and other documents because he claims they are not signed by Defendants or counsel in violation of Rule 11 of the Federal Rules of Civil Procedure.  (ECF No. 162.) Under Local Rule 5.0, electronic filings are governed by the CM/ECF Administrative Procedures available on the website for the Middle District of Georgia.  Those Procedures dictate that the login ID and password, along with the prescribed typed signature on filed documents constitute the filer's electronic signature for all purposes under the Federal Rules of Civil Procedure.  Therefore, no violation is found and Plaintiff's motion is **DENIED**.

Finally, Plaintiff asks for a "protective order" to relieve him of the duty to respond to the motions to dismiss pending resolution of his other motions discussed in this section. (ECF Nos. 125.) Plaintiff's motion essentially requests a stay of the motions to dismiss or an extension of time to respond. Plaintiff makes the same arguments in this motion as in his previous ones. Again, these arguments are self-serving and unsupported. Furthermore, the filings that Plaintiff alleges are false relate only to the issue of grievances and exhaustion, yet Plaintiff contends that the fraudulent nature of these filings completely prevents him from responding to the merits of the motions. The Court cannot make the logical leap required by Plaintiff's argument, and therefore his motion is **DENIED**.

## VI.   Procedural Motions (ECF Nos. 110, 154, 155, 156)

Currently pending are numerous motions by Plaintiff for various types of relief from the Court: a motion for default judgment against all Defendants filed on January 2, 2013 (ECF No. 154); a motion for service of process on the unserved defendants by the US Marshal's Service filed on January 22, 2013 (ECF No. 155); a motion for sanctions under Rule 60(b)(6) of the Federal Rules of Civil Procedure claiming that Defendants had perpetrated a fraud on the Court filed on February 7, 2013 (ECF No. 156); and a motion to appoint an expert to counter the potential expert testimony from Defendants (ECF No. 110).

Plaintiff's motion for default judgment (ECF No. 154) is **DENIED**. At the time Plaintiff filed his motion the court had not yet completed its initial review of the Complaint, and no Defendants had been served. Therefore, default was not appropriate at

that time, and is not appropriate now.  Plaintiff's motion for service of process was filed at that same early stage of the litigation.  Service has since been made on all but two of the Defendants, and given the recommendation herein that the claims against Defendants Graves and Carter be dismissed, Plaintiff's motion is **DENIED**.

Plaintiff also filed a motion in February 2013 claiming the Defendants' attorneys perpetrated a fraud on the court for filing a motion for extension of time in order to "delay process" of Plaintiff's case.  The Court finds Plaintiff's arguments unavailing and therefore Plaintiff's motion (ECF No. 156) is **DENIED**.

Finally, Plaintiff filed a motion for the Court to appoint an expert in order to counter the potential expert testimony that he foresees Defendants putting forth at trial. (ECF No. 110.)  Plaintiff bases his request on Rule 706 of the Federal Rules of Evidence. That rule, by its nature, is discretionary.  The Court finds that Plaintiff has not shown a particularized need for the appointment of an expert.  Plaintiff has adequately described and established the factual bases upon which he has made the claims that have been allowed to proceed and the Court finds that an expert witness is not required at this stage of the litigation.  Plaintiff's motion is **DENIED**.

## VII.   Motion to Appoint Counsel

Plaintiff has also filed a Motion to Appoint Counsel.  (ECF No. 166.)  In it, Plaintiff argues that counsel is needed because he is "faced with exceptional circumstances."  (Pl.'s Mem. in Supp. of Mot. to Appoint Counsel 1, ECF No. 166-2.) Pursuant to 28 U.S.C. § 1915(e)(1), "[a] district court has discretionary authority . . . to appoint counsel for an indigent defendant in civil cases."  *Holt v. Ford*, 862 F.2d 850,

853 (11th Cir. 1989).  When deciding to appoint counsel, the court must consider the legal and factual complexity of the plaintiff's case.  *Id.*  Generally, no right to counsel exists in § 1983 actions; appointment of counsel is a privilege justified only by "exceptional circumstances."  *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).  No exceptional circumstances justifying appointment of counsel are found in this action. Plaintiff has adequately set forth the facts underlying his claims, and the Court has determined that some claims should proceed beyond this stage of litigation.  Therefore, Plaintiff has shown he is capable of proceeding in this action *pro se*.  Accordingly, Plaintiff's motion to appoint counsel is **DENIED**.

## VIII.  Order to Stay

On September 17, 2013, this Court granted Defendants' request to stay discovery pending the resolution of their motion to dismiss.  (Text Only Order, Sept. 17, 2013.) Because it is recommended that the motion to dismiss be denied in part, the Court further recommends that the stay be lifted and discovery be allowed to commence as to Plaintiff's remaining claims.  Furthermore, the Court notes that discovery shall be strictly limited to the claims allowed to proceed at this time.  The Court will not address in this action any other issues that Plaintiff raises regarding the claims that have been dismissed to date.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is ORDERED that Plaintiff's motion (ECF No. 132) to voluntarily dismiss is GRANTED and the related motions to amend (ECF Nos. 117 & 128) are DISMISSED.  It is further ORDERED that Plaintiff's motions

to amend (ECF Nos. 91, 138, 152, 156) and miscellaneous motions (ECF Nos. 110, 122, 123, 125, 154, 155, 156, 162, 166) are DENIED.  It is RECOMMENDED that Plaintiff's motions for preliminary injunctions and temporary restraining orders (ECF Nos. 126, 144, 153) be DENIED, Defendants' First Motion to Dismiss (ECF No. 68) be DISMISSED AS MOOT, and Defendants' Second Motion to Dismiss (ECF No. 118) be GRANTED IN PART AND DENIED IN PART.  The undersigned recommends that Plaintiff's claim of punitive segregation in violation of the Eighth Amendment against Defendants Hall, Upton, and Humphrey be allowed to proceed.  All other Defendants should be dismissed from the case.

Under 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this 19th day of May 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE