IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DEXTER SHAW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:12-CV-135 (CAR) |
| | : | |
| Warden HILTON HALL, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Dexter Shaw, a state inmate, filed this *pro se* civil rights action under 42 U.S.C. § 1983 on April 13, 2012, alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment by various members of prison staff at Georgia State Prison. Presently before the Court is Defendants' Motion for Summary Judgement. The United States Magistrate Judge has issued a Report and Recommendation that Defendants' Motion for Summary Judgment [Doc. 255] be granted because Defendants have sufficient penological justification for Plaintiff's confinement in punitive segregation, and they are entitled to qualified immunity.

Plaintiff has filed a timely Objection to the Recommendation, and Defendants have responded to Plaintiff's Objection.[1] Having considered the objections and

---

[1] Plaintiff also filed a Motion to Amend [Doc. 262-1] his Objection to the Magistrate Judge's

1

reviewed the matter *de novo*, this Court agrees with the findings and conclusions of the United States Magistrate Judge that no genuine issues of material fact exist as to Plaintiff's Eighth Amendment claim, and that Defendants are entitled to qualified immunity. Therefore, Defendants' Motion for Summary Judgement [Doc. 233] is **GRANTED.**

In his Objection, Plaintiff objects to the Magistrate Judge's Recommendation for the following reasons: (1) the Court, and not Defendants, "created" the defense that Plaintiff posed a security risk; (2) there are discovery motions that have not been ruled on by the Court; (3) Defendants either withheld or destroyed relevant classification committee reviews and other documents pertaining to Plaintiff's confinement; and (4) Plaintiff has adequately stated a claim and established that the Defendants are not entitled to qualified immunity. The Court discusses each of Plaintiff's objections in turn.

First, Plaintiff contends the Court in its August 28, 2014 Order granting portions of Defendants Motion to Dismiss,[2] acted as "de facto counsel" and invented for Defendants the "security concerns" defense.[3] In that Order, the Court adopted in part and modified in part the Magistrate Judge's Recommendation dismissing all of Plaintiff's claims, except the Eighth Amendment claim involving his twelve-year

---

Recommendation, which the Court **GRANTS**.
[2] Pl.'s Objs., [Doc. 259] at 5-6 (referencing [Doc. 181]).
[3] Pl's Obj., [Doc. 259] at 6.

confinement. One of Plaintiff's claims the Court dismissed was an alleged Eighth Amendment violation by a prison doctor for his failure to re-issue a "waist-chain" profile. This Court in its Order agreed with the Magistrate Judge that dismissal was warranted because the doctor was entitled to qualified immunity due to the fact that the law was not clearly established as to whether the failure to reissue such a profile constituted deliberate indifference.[4] Although the Court dismissed Plaintiff's claim, it did so because the decision to discontinue the use of a waist-chain profile did not constitute cruel and unusual punishment, as there was a penological justification for such a use of force—namely, Plaintiff's actions of taking the keys to the prison control room in 2008.[5]

However, the brief discussion about the 2008 incident related only to the dismissal of Plaintiff's Eighth Amendment claims for the failure to re-issue a waist chain profile. In its discussion, the Court noted, "Plaintiff has fully detailed the penological justification for his lack of a waist chain profile: he has taken advantage of that profile in the past to cause what even he terms a 'major security breach.'"[6] At no point, however, did the Court state or even suggest that the breach was also sufficient penological justification for Plaintiff's twelve-year confinement. Moreover, Plaintiff's assertion that Defendants never raised a "security concern" defense is contradicted by

---

[4] *See* [Doc. 181] and [Doc. 168].
[5] [Doc. 181].
[6] [Doc. 181] (internal quotation marks omitted).

the record. Defendants have continuously argued that Plaintiff posed a security risk and therefore his segregation was justified.[7]

Second, Plaintiff alleges there are a number of outstanding motions still pending before the Court, namely his Motion to be Relieved of Court Orders [Doc. 122], his Motion for Sanctions [Doc. 123], and his Motion to Stay Ruling on the Motion for Summary Judgment until various other motions are ruled on [Doc. 248].  However, the first two motions were denied on May 19, 2014,[8] and the third motion was denied on August 11, 2015.[9]  Moreover, this argument is irrelevant to the merits of the Magistrate Judge's Recommendation.

Third, Plaintiff contends Defendants engaged in spoliation of evidence, and, therefore, their Motion should be denied.  Specifically, Plaintiff argues Defendants either destroyed or withheld documents they knew to exist—such as a number of classification committee reviews that were conducted but were not in the record before the Court. Plaintiff also argues Defendants falsified documents—such as the date on which the classification committee reviewed Plaintiff's status, and Defendant Hall's

---

[7] *See, e.g.*, Br. in Supp. of MSJ, [233-1] at 7-8 ("In the instant case, unlike the Court's concern in *Sheley*, Shaw's long term confinement in administrative segregation is not totally without penological justification. In fact, the record contains documentation supporting the decisions rendered by all three Defendants in this action. Indeed, the Defendants at issue here considered the ongoing security risk that Plaintiff posed to the institution.") (internal citations omitted); Defs.' Reply in Supp. of MSJ, [Doc. 244] at 7-10; Hall Aff., [Doc. 233-4] at ¶ 23 ("Any decision by me regarding the continued placement of inmate Shaw in the SMU would have taken into consideration the security risk that inmate Shaw posed to the institution."); Upton Aff., [Doc. 233-3] at ¶ 30 (same); Humphrey Aff., [233-4] at ¶ 17 (same).
[8] [Doc. 168] at 38-39.
[9] [Doc. 251] at 5-6.

4

affidavit which states that he believed Plaintiff was trying to escape or start a riot when he took the keys to the control room in 2008. Thus, Plaintiff contends Defendants' evidence is unreliable and should be disregarded. These arguments are meritless. Plaintiff's issues with discovery and arguments alleging deficiencies in the record are merely reassertions of arguments previously rejected by this Court.[10]

Fourth, Plaintiff contends he adequately states a claim that Defendants violated his Eighth Amendment rights. Plaintiff argues Defendants did not have sufficient penological justification for their decisions to house him in segregation. In support of this argument, Plaintiff largely reasserts the arguments he presented in his opposition to Defendants' motion for summary judgment.[11] Plaintiff also avers that each of the penological justifications listed in the Magistrate Judge's Recommendation—Plaintiff's status as a "close custody" inmate, the severity of the 2008 breach, Plaintiff's disciplinary report ("DR") history, and the classification committees' independent reviews—are inadequate.[12] Plaintiff argues half of the inmates in the Georgia Department of Corrections ("GDC") prisons are classified as "close custody"; the 2008

---

[10] Plaintiff filed several motions to compel and other motions related to discovery. *See* [Docs. 199, 200, 201, 202, 205, 206, 219]. All of these motions were denied on January 20, 2015, because the items Plaintiff contended were destroyed or withheld were "either irrelevant to the remaining claim, or have been responded to in as complete a manner as is possible and required by the discovery rules." [Doc. 221]. Plaintiff again moved to compel and sought sanctions for the withholding or destruction of similar documents on April 6, 2015. Mot. to Compel, [Doc. 224]. This motion was denied on April 6, 2015. [Doc. 237].
[11] *Compare* Pl.'s Resp. in Opp'n to MSJ, [Doc. 239-1] at 6-12, *with* Pl.'s Objs. [Doc. 259] at 12-19.
[12] *See* R&R, [Doc. 255] at 15.

incident was done in "good faith," and the internal investigation did not find any wrongdoing on his part; Plaintiff's DR history is comprised of fabricated and dismissed DRs; and he was only adjudicated guilty on two DRs during his time at Georgia Department of Corrections Prison ("GDCP"). He additionally argues the classification committees' reviews should be disregarded due to the spoliation issues and because Plaintiff believes they were falsified.  These arguments are unpersuasive.

      First, it is irrelevant whether half the prisoners in GDC are classified as "close security."  Second, whether or not Plaintiff committed a "security breach" in "good faith" or engaged in an effort to start a riot, the record confirms that Defendant Hall viewed Plaintiff's activities as a dangerous security breach and based on that belief made the determination to house Plaintiff in segregation.  Moreover, the record does not indicate Plaintiff was found innocent of any wrongdoing during the 2008 incident. On the contrary, the record shows he was not issued a DR and the officers who witnessed the incident "did not have an explanation as to why [Plaintiff] was not issued a DR."[13] Third, even taking Plaintiff's allegation as true that the dismissed DRs relied upon by Defendants were fabricated, Plaintiff was still adjudicated guilty of insubordination and threatening a prison staff member with a razor on July 31, 2011—a serious and dangerous offense.[14] Finally, Plaintiff's arguments that the classification

---

[13] Hall Aff. Ex 5, [Doc. 235-2] at 1-2.
[14] Humphrey Aff. Ex. 3, [Doc. 235-3] at 21-23 (detailing the allegations and procedural history of DR # 228073).

committees' reviews should be ignored in their entirety are unavailing for the same reasons discussed above: Plaintiff offers no evidence to support the proposition that Defendants tampered with evidence.

Moreover, even if this Court found there was insufficient penological justification for Plaintiff's confinement, Defendants would still be entitled to qualified immunity.[15] Plaintiff argues Defendants are not entitled to qualified immunity because: (1) they were not acting within the scope of their discretionary authority, as they violated aspects of the GDC's Standard Operating Procedure when they considered dismissed DRs in making their determinations,[16] and (2) the law was clearly established because *Sheley v. Dugger*[17] is controlling in this case, and precedent dictates that lengthy periods of time in solitary confinement without penological justification are unconstitutional.[18] However, the Court is unpersuaded.

First, Plaintiff seems to misunderstand the discretionary authority analysis for qualified immunity. "[D]iscretionary authority [] include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority."[19]  For purposes of the qualified immunity analysis, the court does not "focus[] on whether the acts in question involved

---

[15] R&R, [Doc. 255] at 18-19.
[16] Pl.'s Objs., [Doc. 259] at 25-27
[17] 833 F.2d 1420 (11th Cir. 1987).
[18] Pl.'s Objs., [Doc. 259] at 27-28.
[19] *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

7

the exercise of actual discretion[.]"[20] Instead, "we assess whether [the acts] are of a type that fell within the employee's job responsibilities."[21] This contrasts with "many areas other than qualified immunity," in which "a 'discretionary function' is defined as an activity requiring the exercise of independent judgment[] and is the opposite of a 'ministerial task.'"[22] Furthermore, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology."[23] Defendants, as wardens, were clearly acting within their authority when they signed off on the decision to house Plaintiff in administrative segregation.

Second, although Plaintiff attempts to dispute that the law is well established in this area, his arguments are unpersuasive.[24] There is a lack of controlling case law on this subject. Indeed, the only relevant case Plaintiff cites is *Sheley*.[25] However, as

---

[20] *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).
[21] *Id.*
[22] *Id.*
[23] *Id.* at 1266.
[24] Pl.'s Objs. [Doc. 259] at 27-28.
[25] 833 F.2d 1420 (11th Cir. 1987). *See* Pl.'s Objs. [Doc. 259] at 27-28. Plaintiff also cites to a number of other cases that are irrelevant. For instance, Plaintiff cites to *Ort v. White*, seemingly in support of his argument that the law clearly establishes that Defendants' actions were without sufficient penological justification; however, this case does not discuss what could be considered sufficient or insufficient penological justification. *Ort v. White*, 813 F.2d 318 (11th Cir. 1987) (holding that a correctional officer's decision to deny an inmate working on the "farm squad" water, as a disciplinary sanction, did not violate the Eighth Amendment and that inmate's 58 day confinement to the "sallyport" likewise did not violate the Eighth Amendment where he was provided with food, water, and other necessities). Plaintiff also cites to *Hardwick v. Ault*, 447 F. Supp. 116 (M.D. Ga. Jan. 12, 1978), but this case is not binding on this Court and is readily distinguishable from the facts of this case. *Hardwick*, 447 F. Supp. at 125-128 (finding the

discussed in the Magistrate Judge's Recommendation, not only does *Sheley* involve review of a habeas petition, wherein the inmate sought release from punitive segregation, but the Eleventh Circuit in *Sheley* only went so far as to state that a "twelve-year confinement in [segregation] raises serious constitutional questions[,]" and "[i]f the segregation is punitive, it should be determined whether it shocks the conscience, is grossly disproportionate to the offense, or is totally without penological justification."[26] *Sheley* simply provides no guidance as to what may or may not constitute sufficient penological justification. Moreover, there is no other case law that even provides examples as to what would or would not be sufficient penological justification to support such a confinement. Therefore, the Court finds Plaintiff's objections unpersuasive and agrees with the Magistrate Judge that Defendants are entitled to qualified immunity.

Therefore, based on the foregoing, the Report and Recommendation [Doc. 255] is **ADOPTED** and **MADE THE ORDER OF THE COURT**. Defendants' Motion for Summary Judgment [Doc. 233] is hereby **GRANTED**.

---

conditions of confinement unconstitutional where the inmates housed in segregation were assigned for slight infractions such as insubordination in advocating for prison work stops, housed for an indefinite period of time due to the "lack of criteria by which a prisoner [could] work his way out," given limited ability to exercise, and where "some of the practices there constitute[d] gratuitous punishment inflicted without purpose.").
[26] *Sheley*, 833 F.2d at 1429.

**SO ORDERED,** this 29th day of March, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT
